41    763
46    779
41    763
55    107
41    763
57    615
41    763
e76   403

## The Phelps & Bigelow Windmill Company v. Frederick Piercy.

1. WINDMILL — *Defect* — *Notice.* Where a windmill is ordered to be erected and put on trial, and the party ordering agrees to notify the one delivering and erecting it of any defect within thirty days after its erection, and he complains of one defect within that time, which is promptly remedied, but of no other, he cannot refuse to take the mill for the reason alone that it was defective in a part about which he made no complaint till after the thirty days had elapsed.

2. WRITTEN AGREEMENT, *Inadmissible Evidence to Change.* A windmill was ordered on trial under an agreement that if it did not work well after its erection, the party ordering should notify the other party within thirty days, who would be given thirty days after notice to remedy any defects; and it was provided further that the written instruments embodied all the agreements between the parties. In an action for the price of the mill, oral evidence is inadmissible to prove a parol contract that the written agreement should not take effect till after the purchaser should be satisfied with the mill.

3. Two CONTRACTS, *Construed Together.* Where two written instruments, executed at the same time concerning the same transaction, comprise the contract between the parties, they should be construed together so as to give force and effect to both of them, when it can be reasonably done.

*Error from Johnson District Court.*

On June 5, 1885, the Phelps & Bigelow Windmill Co. and Fred Piercy entered into an agreement about the erection of a windmill with various attachments, on Piercy's land. The company insists that the entire contract between the parties is in two written instruments — one a statement made by Kelsey, the duly-authorized agent of the company; the other an order for the windmill, attachments, etc., signed by Piercy. He claims there was a parol agreement in addition to the written instruments, which was substantially that the agreement set forth in his written order should only take effect when he was satisfied with the working of the mill. The statement of Kelsey, after omitting the letter-heading of plaintiff company, is:

"Lenexa, Kas., June 5, 1885.—This is to certify that I have let Mr. Fred Piercy have one I. X. L. windmill on trial, at list prices. S. W. Kelsey."

The order of Piercy, after directing what articles should be delivered, and the price of each, the manner of erection, etc., provides:

"If you accept this order and ship me the goods and materials ordered above for such erection and improvement, it is with the distinct understanding, and is a part of this order, that if the windmill does not work well for thirty days after its erection, I am to notify you within said thirty days and give you thirty days after receipt of such notice by you in which to remedy the defect; and if you cannot make it work well, you are to remove the windmill and release me from the amount which I have agreed to pay, opposite the above. A defect in any one article used on this erection and improvement is to affect price and settlement of that article only. . . . It is understood that this order, if accepted by you, embodies all the agreements there are between us of any nature whatsoever."

In compliance with this order the windmill was shipped, and erected upon defendant's farm. Among other things ordered was a grinding attachment, listed at $45, and a churn

attachment without any value set against it. Defendant was a dairy farmer, milking at that time about fifty cows; this windmill was placed so that it pumped water from a spring one hundred yards away to a milk tank near the house, and after the water had passed through this tank, used for cooling milk, it passed down to his corral, and there ran into another tank or trough to water his cattle. There is quite a volume of testimony showing that the grinder was unsatisfactory— almost useless—and that the defendant had never been able to use the churn successfully. Some weeks after the windmill had been erected and had been on trial, the defendant telegraphed to the company at Kansas City that it was not satisfactory and that the company must come and take it away. It appears that upon the 30th of July following, two agents of the company went to the farm of defendant to secure a note for the payment of the windmill, and to remedy any defect in the mill or its attachments. At that time the defendant was at work in the hay field quite a distance from the windmill. After a great deal of altercation and controversy, he stated that the pump was not working to suit him because the water would not run in the pipes, as the agents of the company testified; and they further state that at that time he made no complaint of the grinder or churn; in rebuttal the defendant substantially corroborated their statements. These agents went to the windmill without defendant, and found the pipes clogged with leaves, and soon cleared them and the water ran through freely. Upon the trial of the case the defendant testified that it pumped water all right, but complained of the grinder and churn. A long time after the thirty or sixty days would have expired under the order of defendant, he complained to the company of the failure to grind corn and churn butter.

The windmill company brought its action to recover for the value of the mill, and upon the trial at the November term, 1886, the defendant recovered judgment against the plaintiff for costs. The plaintiff complains of this judgment, and brings the case to this court for review.

*F. R. Ogg,* and *Samuel T. Seaton,* for plaintiff in error; *Geo. L. Jones,* of counsel.

*John T. Little,* for defendant in error.

Opinion by HOLT, C.: The defendant insists that the written instruments do not constitute the entire contract between the parties, but in addition thereto it was agreed that after defendant was satisfied with the working of the mill, then these written agreements should be put in force, and not till then. Plaintiff complains of the introduction of testimony tending to show there was such an oral agreement. We are not certain that the testimony introduced would have established it. We will state, however, that it was error to admit testimony of such a character. There was a special and distinct provision in both the written instruments constituting the agreement about the time given for a trial of the windmill. The testimony offered would have been inadmissible, for the reason that it would have changed the contract on a point which had been definitely agreed upon between the parties and reduced to writing. Taking the statement signed by Kelsey and the order of defendant together as the entire agreement, we can, we believe, correctly arrive at the intentions of the parties. Plaintiff, through its agent Kelsey, states that it had let defendant have an I. X. L. windmill on trial, and defendant in his order states "if the windmill does not work well for thirty days after its erection," he was to notify the company and give it thirty days after receipt of such notice to remedy any defects. Now it is evident, construing these written instruments together, that the notice mentioned in the statement of Kelsey had reference to the notice stipulated for by Piercy. The statement signed by Kelsey was given to Piercy evidently for the purpose of furnishing him with evidence that he might retain in his possession, that there was such an agreement in the order he had made. We are unwilling, under this belief, to allow parol testimony to contradict or vary these mutual stipulations. It will be remembered

that this statement of Kelsey and the order of defendant were made at the same time and concerning the same transaction, and, construed together, make the contract. It is also further provided in terms in the order of Piercy, that it was understood his order embodied all their agreements of any nature whatsoever. The fact that Piercy was anxious to notify the company within thirty days of the failure of the mill to do satisfactory work, and to ask the company to take it back, would indicate that he at that time believed that the time of trial was agreed to be thirty days as mentioned in his order.

Construing this contract in this way, it would have been the duty of the defendant to point out to the agents of plaintiff, when they came to his farm, the defects which he asked the company to remedy. His failure to do so was an excuse for the company for not remedying them. It is probably true in this case that the grinding and churning attachments were practically valueless, and it is urged by the attorneys for plaintiff that after striking out the amount they were listed for, they would be willing to have this court give judgment for the balance. The verdict of the jury was a general verdict for the defendant, and without special findings of fact we could not render a judgment as attorneys for plaintiff desire. Moreover, it is fairly deducible from the evidence that the grinder and churn, although called attachments, did not work by reason of some imperfections in the mill — either from the lack of a governor, or possibly the failure of defendant to understand its use, or the lack of power in the mill; hence it would hardly be a fair construction of the contract to compel the defendant to pay for the full value of the mill less these attachments when the attachments themselves may have been without defect, but did not perform the work intended for them to do because of some defect in the mill itself or some part of it.

The plaintiff asks for a reversal of this case for the reason, among others, that the verdict is contrary to the evidence. We believe upon the facts in the case, which are substantially uncontradicted, and the testimony of defendant himself, and

under the construction we have given this contract, that it was entitled to a new trial. It is certain that the mill was of some value, and the defendant failed to point out the defects in the mill or its attachments within the time provided in his order for the same.

We therefore recommend that the judgment be reversed, and a new trial granted.

By the Court: It is so ordered.

All the Justices concurring.