J. P. SLATTEN *et al.* v. J. KONRATH *et al.*

1. CONTRACTS, *Written—Instructions as to Legal Effect.* Where written contracts are the basis of the plaintiff's claim, they are entitled to have the jury instructed as to their legal effect.

2. ———— *Failure to Perform, not Fraudulent.* A failure to do certain things which one of the parties to a contract has agreed to do in the future is not a fraud. A contract based upon such an agreement is not fraudulent. To constitute such a contract fraudulent there must have been fraud as to some fact then existing.

3. ———— *Not Varied by Parol Testimony.* Written contracts, unless overthrown by fraud, must be the uncontradicted agreement between the parties thereto, so far as their intent can be ascertained from the contracts. They cannot be contradicted or varied so far as their terms are clear and unambiguous.

Slatten v. Konrath.

4. ——— *Evidence*—*Future Performance.* A positive sale, in writing, of personal property which provides a price which is to be paid, is not varied by a contemporaneous parol contract as to how the price is to be paid, nor as to when the price is to be paid, if the time be in the future.

5. ——— *Evidence*—*Possession.* A written contract of sale, which says that possession of the property sold is now given to the grantee to have and to hold forever, cannot be varied or contradicted by proof of a parol contract that possession is to be given after some future act of said grantee.

6. ——— *Evidence*—*Title.* A written contract of sale which says, "I do grant, sell, transfer, and deliver," and "the possession is now given" to the grantee, cannot be varied or contradicted by proof of a parol contract that the title was not to pass with the possession, but was to remain in the grantor until some condition precedent had been performed by the grantee.

7. ——— *Erroneous Instructions.* The instructions in this case are erroneous, and misled the jury to the prejudice of the plaintiffs: (1) In not stating the law relating to written contracts and applying it to the written contracts given in the evidence; (2) in not stating the law relating to fraud and applying it to the evidence; (3) in apparently ignoring the written contracts, and treating the contracts as though they were all parol; (4) in stating that if they found that the plaintiffs promised to pay the checks "for the purpose of inducing Hinkson to part with the title to the corn, and with the fraudulent intent not to pay the checks," their verdict should be against them.

MEMORANDUM.—Error from Marion district court; FRANK DOSTER, judge. Action in replevin brought by J. P. Slatten, J. F. Bryant, E. A. Dupree, S. Steiner, Henry Schowe, William Conkling, and Joseph Webb, partners as the Bank of Kansas, against J. Konrath and The Chicago, Rock Island & Pacific Railway Company. Judgment for defendants. Plaintiffs bring the case here. Reversed. The material facts are stated in the opinion, filed November 9, 1895.

*Grattan & Grattan*, for plaintiffs in error.

*Keller & Dean*, for defendants in error.

The opinion of the court was delivered by

DENNISON, J. : This is an action in replevin brought by the plaintiffs in error to recover a crib of corn containing about 2,000 bushels from the defendants in error, and for damages for its detention. The plaintiffs in their petition claimed to be the owners and entitled to the immediate possession thereof. The defendant, Konrath, for his answer filed a general denial, and the railroad company denied the allegations of the petition, and alleged that it held the corn for transportation, disclaimed ownership, and asked to have Hall and Robinson, who held its bills of lading, made parties defendant. A jury was impaneled, and upon the trial the plaintiffs introduced a bill or contract of sale in writing, signed by C. A. Hinkson, a copy of which is as follows :

" Know all men by these presents, that in consideration of the rate of 45 cents a bushel for all corn in the crib at Waldeck, Kas., and the number of bushels to be determined by the returns of shipment, to me to be paid, I do grant, sell, transfer and deliver unto the Bank of Kansas, its successors, executors, administrators, and assigns, the following goods and chattels, viz. : All the corn owned by me in the crib in Waldeck, Kas., being a crib standing near the railroad, and the only crib of corn owned by me at Waldeck ; the corn to be shipped as soon as possible. The possession of the corn is now given to the Bank of Kansas, to have and to hold, all and singular, the said goods and chattels forever ; and the said grantor hereby covenants with the said grantee that he is the lawful owner of the said goods and chattels ; that they are free from all incumbrances ; that he has a good right to sell the same as aforesaid, and that he will warrant and defend the same against the lawful claims and demands of all persons whomsoever. In witness whereof, the said grantor has hereunto set

his hand this 11th day of August, A. D. 1890.— C. A.
HINKSON.

"Bill of sale filed for record August 11, 1890, at
2 :15 o'clock, and recorded in McPherson county,
Kansas."

They also introduced evidence tending to prove a
demand of the property from said Konrath and said
railroad company ; the number of bushels ; its value,
and the indebtedness of Hinkson and Hinkson & Co.
to the bank.   The defendant, Konrath, offered in
evidence several writs of attachment issued to him
as constable by a justice of the peace, in each of
which said Hinkson was the attachment-debtor.
These attachments show that he seized the corn on
August 21, 1890.   He also introduced evidence ·at-
tempting to show that the contracts made between
Hinkson and the plaintiffs were fraudulent, and that
Hinkson attempted to rescind the same.   To support
the claim of fraud, Hinkson testified that at the time
the sale was made, Mr. Bell, the president of the bank,
agreed with him that he would pay some outstanding
checks given by said Hinkson on the bank in pay-
ment for wheat he had bought, and that afterward
the bank refused to pay the checks, and he attempted
to rescind the sale.   During the cross-examination of
Hinkson, he admitted having an additional contract
signed by Mr. Bell, as president of the bank, which
was executed at the same time as the bill of sale above
mentioned, and he delivered the same to plaintiff's ·
attorneys.   They introduced it in evidence as part of
the cross-examination of Hinkson.   A copy of said
contract is as follows :

"C. A. Hinkson has this day sold to the Bank of
Kansas a crib of corn, at 45 cents a bushel, at Wal-
deck, Kas., and the same, when the number of bushels
is determined by the return of shipment, he (Hink-

son) shall have a further credit of 5 cents on each bushel, and the credit to be placed on his account with the Bank of Kansas, and the Bank of Kansas agrees to give the credit.—D. M. BELL, *President.*

"Dated August 11, 1890."

The defendant, Konrath, also introduced the evidence of Hinkson attempting to show that the sale of the corn from Hinkson to the bank was conditional, and that the bank was to pay the checks before title to the corn should pass, and also that he only gave the bill of sale to Bell so that he could show it to the stockholders in Missouri, and thereby make a better showing to them of the condition of the bank. The jury found for the defendants, and judgment was rendered for them, and the plaintiffs bring the case here for review. The plaintiffs in error contend that the court erred in the instructions given to the jury on the trial. The following is a full copy of the instructions given in the case:

"Gentlemen of the jury: The plaintiffs sue in replevin to recover an amount of corn claimed by them upon a contract of purchase of such corn from one C. A. Hinkson, and paid for, as they say, by crediting the purchase-price of the same upon an indebtedness claimed by them to be due from one C. A. Hinkson, and they produce in evidence a bill of sale by said Hinkson of such corn. The defendants admit the sale of such corn and the execution of such bill of sale, but they say that such sale and bill of sale were made in consideration of an agreement by plaintiffs to pay certain outstanding checks of said C. A. Hinkson and upon the condition of said plaintiffs paying such checks, and that before such corn was in fact delivered to the plaintiffs under said agreement and bill of sale the plaintiffs refused to perform such conditions, to wit, the payment of such checks; and that because of such refusal said Hinkson rescinded such contract of sale. The defendants also say that said

Hinkson was induced to make such sale and execute such bill of sale upon the strength of the representations then and before that time made by the plaintiffs that they would pay certain of said Hinkson's checks, and the plaintiffs did not when they made such promises to pay such checks intend to fulfill the same, and only made the same with the fraudulent purpose of securing the making of such sale and the possession of such corn, and with the fraudulent intention of never complying with such agreement, and that upon the discovery of such fraudulent purpose of such plaintiffs said Hinkson rescinded said contract of sale. I instruct you, as a matter of law, that the consideration for such contract of sale as the plaintiffs claim it to have been is a valid and sufficient consideration, and that the consideration for the same as claimed by the defendants is likewise valid, and unless you believe from the evidence that the claim of the defendants is true, your verdict should be for the plaintiffs.

"The first claim made by the defendants involves a consideration of the question whether the property in the corn passed under the agreement of the parties until the payment of the checks, and whether such sale could be rescinded for a failure to pay such checks, or whether such property passed to the plaintiffs, leaving Mr. Hinkson to a suit for damages if they were not paid. This is a question of intention, to be gathered from the words of the parties in making the contract, both the words of the bill of sale and the conversations of the parties leading up to the same and concerning such sale. If you believe from the evidence in the case that the doing of one thing, as, for instance, the passing of title to the property, was conditional upon the doing of something by the other party, as the payment of the checks, then I instruct you that the plaintiffs acquired no property in such corn until such checks were paid, and cannot maintain this action. In other words, where one person agrees to sell to another, in consideration of something to be done by the purchaser, the title does not pass until the purchaser performs the condition on

41—APP.

his part. But, on the other hand, I instruct you that if you believe from the evidence that the parties intended that the title of the corn should immediately pass upon the making of the contract, and that Mr. Hinkson would trust to the good faith of the plaintiffs to perform their part of the contract by paying the checks, then the corn became the property of the plaintiffs, even though they did not pay the checks, and they are entitled to recover. This, however, is subject to a qualification or exception which arises upon the defendants' second claim, to wit, the claim of fraud. I instruct you that, if you believed from the evidence that the agreement and intention of the parties was that the title to the corn should at once vest in the plaintiffs, and that Mr. Hinkson was to trust to the plaintiffs to pay the checks, yet if the plaintiffs made such promise for the purpose of inducing Mr. Hinkson to part with the title to the corn and with the fraudulent intention to not pay the checks, then the law holds that the seller had the right to rescind and take the corn back, and, having such right, he may defend this action of the plaintiffs, and your verdict should be against them upon this point.

"The fact, if it be a fact, that Mr. Hinkson is indebted to the plaintiffs, does not affect the defendants' rights to hold or recover back the corn. Of course the fact of such indebtedness, if there be any, may be considered by you in determining what the contract and intention of the parties were, but such indebtedness cannot be considered as an offset to the defendants' claim. The burden is upon the plaintiffs to prove by a preponderance or greater weight of the evidence their right to the possession of the corn and the unlawfulness of the defendants' detention of the same. This does not mean by the greater number of witnesses, but it means by evidence that appears to you to be more cogent and weighty, more reasonable and apparently truthful. You are exclusive judges of all the evidence in the case, and the credibility of all the witnesses. You are required also to find the market

value of the property at the time of the commencement of this action.—FRANK DOSTER, *Judge*."

The court wholly failed to give the law relating to the written contracts. This was the basis of the claim of the plaintiffs, and they were entitled to have the jury instructed as to their legal effect. Not to do so is utterly to ignore plaintiffs' title. "Where a written contract is unambiguous in its terms, its interpretation or construction is a matter of law for the court." (*Warner v. Thompson,* 35 Kas. 27.) These contracts are valid and binding unless overthrown by the claim of fraud. There is an entire absence of proof of fraud in the transaction. The only fraud attempted to be shown is the claim of Hinkson that the bank did not, after said sale, do the things which Hinkson said it agreed to do as to the payment for the corn. This would not constitute a fraud, and besides, the contracts stipulated for a different time of payment.

"Where two written instruments executed at the same time concerning the same transaction comprise the contract between the parties, they should be construed together so as to give force and effect to both of them, when it can be reasonably done." (*Windmill Co. v. Piercy,* 41 Kas. 763.)

These contracts must be construed together and must stand, unless it is shown that they were fraudulently obtained—that Hinkson was deceived by the plaintiffs or their agents as to some fact then existing. A promise to do something in the future which they failed to do is no fraud. Unless overthrown, these contracts must be the uncontradicted agreement between these parties, so far as their intent can be ascertained from the contracts. They cannot be contradicted or varied so far as their terms are clear and

unambiguous. An examination of the contracts will show that, at least, the following stipulations were clearly and unambiguously set forth :

"Hinkson sells, transfers and delivers to the Bank of Kansas the corn, of which possession is now given to said bank ; the bank is to ship the corn as soon as possible, and the returns from the said shipment are to determine the number of bushels ; the said Hinkson is to be paid the sum of 45 cents for each bushel thereof, and is to receive a further credit on his account with the bank of 5 cents for each bushel."

The sale is positive and without conditions, and the consideration is the corn upon the one side and the promise to pay 45 cents per bushel and give a credit of 5 cents per bushel upon the other side. The constructive possession of the corn is at the time of the delivery of the contracts given to the bank. The manner in which the 45 cents per bushel is to be paid in this case does not seem to be clearly understood. The presumption is that it is to be paid in cash.. The plaintiffs claim it is to be credited on said Hinkson's indebtedness to the bank. The defendant claims that it was to be paid by the payment of his wheat checks. Such a parol agreement would not alter or vary the terms of the written contract.

"A parol contract may be made between the parties contemporaneously with the written agreement if it is separate and independent in its terms, and in no way alters, varies or contradicts the written stipulations." ( *Schoen v. Sunderland*, 39 Kas. 758.)

The time when such payment was to be made might have been determined by a parol agreement, provided it was to be done after the sale and delivery of the corn. To say that it was a condition precedent to the delivery of the possession of the corn would vary and contradict the terms of the written contracts. The

contract gives immediate possession of the corn, and says the 45 cents per bushel is *to be paid*. Admitting the contention of the defendants to be true, it provides for a future performance. Their claim is that the bank was to pay the wheat checks as they might come in from time to time. This could not be a condition precedent to the sale and delivery of the corn. The bill of sale says: ". . . The possession of the corn is *now* given to the Bank of Kansas, *to have* and *to hold* . . . forever." The parol agreement claimed by the defendants is that, after payment of an indefinite number of wheat checks, the possession is to be given. This is. a variance from the written contracts. It cannot be claimed that the title was not to pass with the possession, for the written contract of Hinkson was "I do *grant, sell, transfer* and *deliver*"—not in the future, after something else is done, but *now*.

The instructions are erroneous, and misled the jury to the prejudice of the plaintiffs: (1) In not stating the law relating to written contracts and applying it to the written contracts given in evidence ; (2) in not stating the law relating to fraud and applying it to the evidence ; (3) in apparently ignoring the written contracts, and treating the contracts as though they were all parol ; (4) in stating that if they found that the plaintiffs promised to pay the checks "for the purpose of inducing Hinkson to part with the title to the corn, and with the fraudulent intention to not pay the checks," their verdict should be against them. The instructions are given in full, together with a synopsis of the evidence, and it will not be necessary to call further attention to them. Examined in connection with the views already expressed herein, it will be seen that the instructions almost wholly fail to apply to the evidence in this case.

Other errors have been assigned for our consideration, but as it is not likely they will arise upon a new trial, they will not be commented upon.

The judgment of the district court is reversed, and the case is remanded for a new trial.

All the Judges concurring.