THE FARMERS' ALLIANCE INSURANCE COMPANY, *Appellant,* v. D. E. HANKS, *Appellee.*
No. 16,642.

SYLLABUS BY THE COURT.

1. CONTRACTS—*Release of Claim for Damages Modified by Contemporaneous Writing.* A release given upon a settlement for damages by fire caused by the negligence of a railway company, which if it be the only written instrument embracing the terms of the settlement bars any further claim, may still be modified by a contemporaneous written agreement providing that the claimant is to have the amount of a policy of insurance on the property destroyed in addition to the sum paid by the railway company at the time the release was given.

2. ——— *Parol Evidence to Prove a Contemporaneous Written*

Insurance Co. v. Hanks.

*Agreement.* After such a settlement as stated above the
claimant assigned his claim for the amount of the insurance
to the insurance company, and that company then paid the
amount of the policy to him, and then, learning that the
railway company claimed that it had made a full settlement
of the damages and held a release therefor, sued the claimant
and the railway company jointly for the amount it had so
paid. The claimant pleaded another written agreement, ex-
ecuted as a part of, or contemporaneous with, the release,
that he should have the amount of the policy in addition to
the amount paid by the railway company. Parol evidence
was given tending to prove the additional contemporaneous
agreement as alleged, and the contents of such agreement.
It is *held* (1) that this evidence was properly received; (2)
that it supports the findings of the jury; (3) that the find-
ings support the verdict; and (4) that no material error ap-
pears in the instructions concerning such evidence.

Appeal from Rice district court. Opinion filed July
9, 1910. Affirmed.

## STATEMENT.

THE insurance company insured property of Hanks
which was afterward destroyed by fire through the
negligence of a railway company. Hanks settled with
the railway company, receiving $3200 on account of
the loss. The railway company claimed that the set-
tlement was for the entire loss. Hanks claimed that
he was to have $500, the amount of the policy of in-
surance, in addition to the sum of $3200 so received.
The policy contained a subrogation clause. After this
settlement Hanks assigned his claim against the rail-
way company for this $500 to the insurance company,
stating in the assignment that it was the amount re-
tained by the railway company in the settlement. On
receipt of this assignment the insurance company paid
the amount of the policy to Hanks. After learning that
the railway company claimed to have paid Hanks the
full amount of the loss, the insurance company com-
menced this action against Hanks and the railway com-

pany to recover the $500 so paid. Attached to the petition is a copy of a release given by Hanks to the railway company, which purports to be in full satisfaction and discharge of the entire loss. Hanks answered that in the settlement with the railway company the right had been reserved to him to receive this sum from the insurance company, alleging that the terms of the settlement, reduced to writing, so provided. By a cross-petition against the railway company he also pleaded his right to this $500, and prayed that this right should be confirmed, and for equitable relief. The railway company demurred to the petition, which demurrer was sustained. The insurance company replied to the answer of Hanks averring that all the terms of the settlement were embraced in the release. The abstract does not show what, if any, reply was made by the railway company to the cross-petition. Upon the trial separate demurrers of the insurance company and of the railway company to the evidence offered by Hanks were overruled. A verdict was rendered in favor of Hanks, together with special findings. A motion of the insurance company for judgment on the findings was, denied and judgment was entered for Hanks on the general verdict. The railway company is not a party to this appeal.

*Stephen H. Allen, Otis S. Allen,* and *George S. Allen,* for the appellant.

*Samuel Jones,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: The question tried by the jury was whether the release pleaded contained all the terms. of the settlement, the appellee contending that it did not; that another writing was executed with it as a. part of the agreement, whereby the right of the appellee to the insurance money was reserved to be paid

to him in addition to the $3200. Upon this issue the jury made the findings which follow:

"Ques. Did the written contract or contracts between the A. T. & S. F. Rly. Co. and D. E. Hanks, by which the railway company settled its liability for the fire, provide that D. E. Hanks should have the right to collect the insurance policy on the property? Ans. Yes.

"Q. Does 'Exhibit A'—the so-called release—contain the whole of the written contract or contracts between D. E. Hanks and the railway company made at the time of the release of the company? A. No.

"Q. Was it the written contract between D. E. Hanks and the railway company that D. E. Hanks should have the sum of $3200 from the railway company and the right to collect the insurance policy on the property? A. Yes.

"Q. Was any other written instrument executed by either the said D. E. Hanks or E. H. Hemus at the time of the execution of said release and draft, except the affidavit in evidence as 'Exhibit C'? A. A question of doubt, but answered yes.

"Q. If you answer the foregoing question in the affirmative, then state fully by whom such instrument was executed and what its terms and provisions were. A. Terms and provisions were that defendant should be permitted to collect the insurance. Evidence does not prove."

Other findings are that the release pleaded had not been changed since it was signed, and that it was not obtained by fraud. The facts, then, are established that there was no fraudulent alteration of the release pleaded, but that another writing, made and delivered with it, gave the appellee the right to the insurance money, which is the subject of this action.

It is contended that these findings are based on testimony erroneously admitted, and that the court improperly instructed the jury. These alleged errors relate substantially to the same matter, viz., the parol evidence relating to the settlement. It appears that the railway company was represented by a claim ad-

juster, and the appellee by an attorney, at this settlement. Other persons were also present. The appellant proved the execution and delivery to the adjuster of an affidavit of ownership of the property, and the release, and that a draft for $3200 was drawn and delivered to the appellee. Evidence was also given of the adjustment and payment of the loss by the insurance company to the appellee afterward. The appellee then called the attorney who had represented him at the settlement, who testified to the execution of several papers on that occasion. He was shown the release, and was asked if there was any other writing. The following testimony was given:

"Ques. There was some additional writing, then, in that instrument than what is shown in 'Exhibit A'? Ans. There was.

"Q. But just how it was written you do not recall, Judge Clark? A. I don't know as it was written there, I say; I did n't see much of it.

"Q. But you do say there was some other writing? A. I do.

"Q. Then there was no other instrument than this signed by any of these parties, you mean? A. There was other writing, but whether another instrument I don't know.

"Q. You may state, Judge Clark, how this writing you refer to was connected with this writing here, or what it was? A. The relation it bore was, it was a part of the agreement."

The witness was then asked to state the contents of that writing, and upon objection the attorneys for the other parties were permitted to examine him concerning it. After this examination the court asked the witness:

"Judge Clark, I will ask you this question: Does 'Exhibit A' express the entire contract as you understood it as entered into by Mr. Hanks that evening in your office? Ans. No, sir."

Another question having been asked by counsel, the witness said, "I should like to state what happened

Insurance .Co. v. Hanks.

there, and think I could explain it better that way," and was directed by the court to proceed. After some preliminary statements the witness said:

"Now, I don't remember whether this 'Exhibit A' was written there in my presence or not. I hardly think it was, all of it, but I. insisted to these gentlemen that the written receipt or whatever they called it should state in writing the fact that it was not to interfere with, or affect, Mr. Hanks's rights under his insurance policy. One of these gentlemen said in substance: 'We can not settle for the insurance company,' and I said, ' I don't want you to, but I will not consent to Mr. Hanks giving you a receipt for the entire loss. He must be permitted to retain his rights against the insurance company,' and I insisted that should be in writing. It was stated there by one of these gentlemen, I don't know now which one, that they were not paying the entire loss, but they were paying the loss as they had agreed, less the amount of the insurance policy, and I insisted that the substance of this should be in writing. . . . After I had read 'Exhibit A' [the release], and before Mr. Hanks had signed it and I witnessed it, there was something put in writing, and to the best of my recollection it was what I had demanded —that is, that it stated in substance it was not to interfere with Mr. Hanks's rights under his insurance policy, and I have believed from that time that it was put in."

On cross-examination the witness said his recollection was that the appellee signed but two papers, the affidavit and the release; that he did not remember that any paper was attached to the release, but that the provision he had insisted .on was put into it. He also testified .that he could not swear that no other paper was attached to the release.

Another witness who was present at the settlement testified:

"Ques. Was there some papers drawn up there? Ans. Yes, sir.

"Q. Did you see them or hear them read? A. I heard them read.

"Q. Who read them? A. Judge Clark.

"Q. Do you know what the papers were that Judge Clark read there? A. There were other papers drawn up and I did not examine them, so I could not say as to any particular one.

"Q. You don't know what particular paper he read? A. No, sir.

"Q. Now, you may state what that particular paper you do remember that Judge Clark read said. A. I can't give the words, but it said that the railroad company was to give him or pay him $3200 and he was to retain the insurance. That was the amount of it, but I can't give the exact language.

"Q. Then, after that was read, what did they do relative to the papers there, if anything? A. They signed them up."

The appellee also gave similar testimony.

This evidence, if competent, certainly tended to prove the claim of the appellee. The appellant insists that some of the testimony offered to prove the existence of an additional writing relative to the insurance was received in violation of the rule excluding parol evidence varying the terms of a written agreement. The evidence, however, was not offered for that purpose, but to prove the existence of another writing. Thus, testimony of the appellee was received that after discussing the amount of loss by the fire the adjuster said "that he would give me $3200, and I could collect the insurance." Other testimony to the same effect was received, but this was in connection with evidence given to show that a written agreement had been made to that effect, and not to prove a parol agreement. When the inquiry relates to the existence of a written contract, parol evidence of the conversation and circumstances out of which it is claimed that it arose, fairly tending to prove it, is not excluded merely because it may also tend to vary the terms of another writing executed at the same time. The court limited the evidence to this particular issue, and no error is found in the rulings.

Instructions submitting this issue are also com-

plained of, upon the ground that the jury were allowed to predicate their findings upon a parol modification of a written agreement, but this is not the effect of the instructions, for the court stated that the antecedent parol negotiations were not to be considered for the purpose of determining what the real contract was, but for the purpose of ascertaining whether the written agreement as alleged was that to which the parties assented, and directed the jury to find what the written contract was. They were informed that the writing or writings embodying the agreement must govern. Although some of the language used in the instructions may be subject to criticism, any merely verbal inaccuracy is immaterial, especially in view of the finding that there was an additional written agreement, and that its terms were as the appellee had alleged.

It is urged that as the release upon its face purports to be complete, parol evidence can not be allowed to extend its obligations. This rule, however, does not apply where the parol evidence is offered merely to prove another contemporaneous written contract, which with the release constitutes the agreement. All contemporaneous writings relating to the same subject matter are admissible to show the entire agreement. (1 Greenl. Ev., 16th ed., §§ 277-283; *Wilson et al. v. Randall,* 67 N. Y. 338.)

"Where two written instruments, executed at the same time concerning the same transaction, comprise the contract between the parties, they should be construed together so as to give force and effect to both of them, when it can be reasonably done." (*Windmill Co. v. Piercy,* 41 Kan. 763, syllabus.)

The appellee argues that as the issues between the railway company and himself were found in his favor, and the railway company did not appeal, the terms of the settlement are *res judicata,* and the appellant has

no standing in this court for that reason. It is not necessary to consider this question, as the judgment must be affirmed for the reasons already given.

The judgment is affirmed.