No. 21,699.

MARTHA A. WHITE, *Appellant*, v. J. W. WHITE et al., *Appellees*.

SYLLABUS BY THE COURT.

TESTAMENTARY DOCUMENT—*Executed by Husband and Wife—Consent of Wife to Husband's Bequest of His Property*. A document, testamentary in character, by which a husband attempts to dispose of a portion of his property to his wife, to which she signs her name in the presence of two witnesses, is considered in connection with conveyances exchanged between the parties at the same time, as part of one and the same transaction, and *held*, sufficient to show the wife's consent in writing, under the provisions of section 11790 of the General Statutes of 1915, that her husband might bequeath away from her more than one-half of his property; and *held further*, that in determining what the intentions of the parties were, the court may take into consideration all the circumstances showing the situation of the parties, including the terms of a will executed by the husband ten years later (of which the wife at the time knew nothing) and a codicil thereto executed subsequently, the will and codicil expressly referring to and confirming the former document, and also the fact that the wife then

White v. White.

orally assented to the will and codicil, and as part of the same trans-
action executed her own will bequeathing all the property she possessed
to others than her husband.

Appeal from Miami district court; JABEZ O. RANKIN, judge.
Opinion filed December 7, 1918.    Affirmed.

*Alpheus Lane,* and *M. A. Lane,* both of Paola, for the appel-
lant.

*Frank M. Sheridan,* and *Bernard L. Sheridan,* both of Paola,
for the appellees.

The opinion of the court was delivered by

PORTER, J.:   This action was brought April 24, 1916, by the
plaintiff for partition of certain real estate, the defendants
being the executor of the last will of her husband, John W.
White, sr., and his heirs and devisees.   The plaintiff claimed
an undivided one-half interest in the property.   The court
found in favor of the defendants and rendered judgment
against the plaintiff for the costs, and she appeals.

In substance, the facts shown by the court's findings are:

Martha A. White, the plaintiff, and John W. White, sr., were
married November 27, 1877; he was then 52 years of age and
she was 48.   Each had been married before and had a number
of children, most of whom were of age.   No children were
born of this marriage.   John W. White, sr., was the owner of
285 acres of land in Miami county, and the plaintiff owned a
one-half interest in 160 acres of land inherited from her for-
mer husband, and 20 acres which she owned in her own right.
In 1887 the parties had some difficulties, and on August 10 of
that year they called in some neighbors to assist them in set-
tling financial matters.   Mrs. White selected J. B. Wilson to
represent her in the negotiations, and T. I. Siling was called
to represent Mr. White; another neighbor, C. F. Tracy, who
was a notary public, was called in to draw up any papers that
might be agreed upon.   After consultations between the par-
ties and their representatives, which occupied an entire day,
the following document, drawn by the notary public, was
signed:

"I, John W. White, Sr., of Sugar Creek Township, in the County of
Miami, State of Kansas, while in possession of fair health and sound

52—Kan.—3099

mind and memory do make this my will and testament on this 10th day of August, 1887.

"1st. I give and bequeath to my wife, Martha A. White, during her natural life time, provided further that if she marries again, then this instrument shall be void and of no effect in law, the following property and the proceeds therefrom:

"The southeast ¼ of the northeast ¼ of section Twenty (20), Township Eighteen (18), Range Twenty-five (25).

"2nd. One team of horses or mares; 1 wagon and harness for team; 2 cows, 5 head of hogs, such implements as are on the place sufficient to cultivate said described land; provisions and feed until time to raise a crop on the land; all household furniture of every description, except one bedstead and bedding.

"Now we, John W. White and Martha A. White, do hereby waive all right, title or interest in any other property either of them may acquire or have or come in possession thereafter.

"In witness whereof, we have herein set our hands and seals on this 10th day of August, A. D. 1887.          (Seal)     J. W. WHITE, Sr.,
                                                          (Seal)     MARTHA A. WHITE.

"Signed, sealed in presence of each of us and in presence of each of said signers to this instrument on said date.          J. B. WILSON,
                                                          T. I. SILING."

The acknowledgment by the notary public contained a recital that the instrument was written at the dictation and request of J. W. White, sr., "and after being read over by me and fully explained to the said J. W. White and Martha A. White, his wife, they each freely and voluntarily signed the same in my presence and in the presence of the within subscribed witnesses at the residence of the said J. W. White, sr., in Sugar Creek Township in said county and state."

On the same day, and in the language of the findings, *"as a part of the same transaction,"* the plaintiff executed a quitclaim deed to her husband, which conveyed all her "undivided interest as wife of John W. White in and to the within described real estate" (describing the 285 acres owned by him), and John W. White executed a quitclaim deed to the plaintiff conveying in like terms to her all the land belonging to her. The quitclaim deeds were filed for record on September 5, 1887.

Ten years later, on August 7, 1897, John W. White, sr., executed a will in which he disposed of all his property except the life estate and personal property provided for in the instrument of August 10, 1887. Mrs. White was not present at the execution of this will and knew nothing of it at the time.

White v. White.

On March 11, 1913, John W. White, sr., executed a codicil to the will of 1897, which codicil referred to the will of 1897 and also to the document of 1887, confirming both, but making some changes in the disposition of the property of the testator as provided in the will of 1897. Mrs. White was present at the time the codicil was made and heard read the instrument of 1887, also the will of 1897, and the codicil. At the same time she executed her will, devising all her property to persons other than her husband.

The sons and daughters of John W. White, sr., have occupied certain parts of the land belonging to their father for periods of 24 years and more, and they have made certain improvements upon the lands, but during all this time they paid rent to their father of practically one-third of the grain and one-half of the hay raised on the land occupied by each of them. John W. White, sr., paid the taxes during all this time.

John W. White, sr., died September 20, 1915, aged about 90 years, and left surviving him the plaintiff, his widow, three sons, one daughter, and nine grandchildren. The instrument executed in 1887, the will of 1897 and the codicil of 1913 were filed in the probate court and duly admitted to probate, at which time the plaintiff, Martha A. White, filed her election to take under the law.

At the death of John W. White, sr., only a portion of the property described in the instrument of 1887 was then upon the premises occupied by the plaintiff and her husband, and after his death the plaintiff took possession of a part of the household goods, but has since refused to receive the rental from the 40 acres of land described in the instrument of 1887. At the time of his death, John W. White, sr., owned the same land, 285 acres, that he had owned at the time of his marriage to the plaintiff, and in addition thereto was possessed of five or six thousand dollars in personal property and money. Findings 11 and 12 of the court are quoted in full:

"11. I find that at the time of the signing of the instrument of August 10, 1887, that Mr. and Mrs. White then understood that they were making permanent provision for the descent of their respective properties upon the death of either, and intended that the instruments then executed should finally and definitely settle their property relations, and that in case of the death of John W. White, Sr., that the plaintiff should receive the life estate in the 40 acre homestead, and the personal property

described in the instrument and that she should have no further right in or to any property left by her husband, and John W. White understood that in case of the death of his wife that he would receive no part of her property and the instrument signed on that day, together with the quit-claim deed then and there executed were made for the purpose of carrying out this intention and were so understood by the parties.

"12. I find that the instrument of August 10, 1887, is testamentary in character and should be so construed."

As conclusions of law, the court found that the plaintiff was not entitled to a decree of partition, taxed her with the costs of the action, and found the titles of the property involved to rest in the devisees under the will and codicil of John W. White, sr., giving the plaintiff a life estate in the forty acres described in the instrument of August 10, 1887, and on condition that she should not remarry.

The first contention is that the document signed on August 10, 1887, was not sufficient to constitute a consent in writing by Martha A. White that her husband might dispose of all his property by will. The statute relating to wills provides that "no man while married shall bequeath away from his wife more than one-half of his property, nor shall any woman while married bequeath away from her husband more than one-half of her property. But either may consent in writing, executed in the presence of two witnesses, that the other may bequeath more than one-half of his or her property from the one so consenting." (Gen. Stat. 1915, § 11790.)

The present case is substantially controlled by the decision in *Jack v. Hooker,* 71 Kan. 652, 81 Pac. 203. It is pointed out in the opinion in that case that the law does not require that the witnesses shall sign the writing, but only that it shall be executed in their presence, and that the designation of the instrument is not important "if it amounts to a written agreement to relinquish the statutory share and that more than one-half of the property may be devised elsewhere." (p. 655.) There, the consent of the wife was expressed by the execution of a deed which did not itself clearly show that it was intended to be a consent to the provisions of the will; it did not refer expressly to the other papers in connection with which it was executed, but it was said in the opinion that because "they appear to have been part of one transaction, and combine to effect a single purpose," (p. 656) it was proper for the court

to look to the other papers and the circumstances under which they were executed, in order to determine the purpose it was intended to accomplish. In the present case, while the document executed by John W. White, sr., on the 10th day of August, 1887, attempted to bequeath to his wife during her natural life and upon certain conditions, certain property, and did not dispose of the rest of his property, nevertheless, as the trial court held, it was testamentary in character. It was signed by the husband and the wife; and at the same time and as part of the same transaction they executed deeds, the purpose of which undoubtedly was to evidence the consent and agreement which had been entered into that day by which neither was to inherit any property from the other. It was said in the opinion in the Hooker case, *supra,* that writings of this character should be so construed as to give every part of them force and effect, if possible. There is a similarity between the two cases in another respect. There it was said: "It is evident that the parties, as well as the notary who assisted them, were unacquainted with legal forms and the best methods of accomplishing their purpose." (p. 657.) But it was held that the instruments construed together showed the intention of all the parties that the deed was executed to evidence the consent of the wife to the provisions of the will. So, in the present case, the facts and all the circumstances in evidence show this to have been the intention of the parties. It is true that it was not until ten years later that John W. White, sr., executed a will which disposed of the rest of his property, and that the wife knew nothing of the execution of that will at the time. But on March 11, 1913, this will and a codicil thereto, both of which expressly referred to the document executed in 1887, were read to her, and she gave her oral consent to them, and on the same day executed her will devising her own property to persons other than her husband. The instruments executed on August 10, 1887, were all parts of one and the same transaction, as the court finds. They were sufficient of themselves to comply with the statute, and the fact that there was no change in the intention of the parties is fully shown by what transpired in 1913. In our opinion, the conclusion reached by the court on this feature is fully sustained.

The second contention is that if the instruments executed on August 10, 1887, did amount to the consent required by the statute, then it should not be upheld, because it was not a fair and equitable agreement between the husband and the wife, and was not fairly and intelligently made. The evidence conclusively shows that Mrs. White understood the purpose of the agreement, and was fully satisfied with it at the time it was made. There was some conflict in her testimony when her deposition was taken and that given by her on the trial; but she admits that at the time the agreement was made she had no desire to have any part of her husband's property in case of his death before her, and she was sure that she wanted no part of hers to go to him in the event he survived her. J. B. Wilson, who represented her at the agreement in 1887, was a witness, and in answer to the question whether he thought it was fair, said:

"We took into consideration that they were making a living on Mr. White's place and Mrs. White had some money and got the income from her property and if she conserved that, didn't make away with it, that if she lived to be old she would have quite a competency, and they had further told us—she said she didn't want any of his property, and he said he didn't want any of hers, and we thought that we was making a fair decision according to their wishes."

There is nothing in the findings nor in the evidence which, in our opinion, indicates that the contract was not made intelligently, or that any advantage was taken of Mrs. White's ignorance. She knew exactly what her husband's possessions consisted of, and the question whether the amount she was to receive by the agreement was fair and equitable can only be determined by considering the situation of the parties at the time the agreement was made—their age, the property possessed by each, the fact of the two sets of children, the intention of both that the family should continue to live on the property owned by Mr. White, and all the circumstances. We find nothing in the situation of the parties or the circumstances in the case which would justify us in setting aside the judgment of the district court on the ground that the settlement was unfair or inadequate.

The judgment is affirmed.