No. 28,166.

H. W. SKINNER, *Appellee*, v. J. F. SKINNER et al., *Appellants*.

(270 Pac. 594.)

Opinion filed
October 6, 1928.

*John W. Davis*, of Greensburg, and *Adrian S. Houck*, of Medicine Lodge, for appellant J. F. Skinner.

*Riley W. MacGregor*, of Medicine Lodge, *J. N. Tincher* and *Rubert G. Martin*, both of Hutchinson, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by H. W. Skinner against his brother, J. F. Skinner, for specific performance of, and an accounting under, the following contract, designated as exhibit B:

" 'EXHIBIT B.'

"AGREEMENT. .

"I hereby agree to transfer back to H. W. Skinner three hundred eighty (380) shares of the stock of the Medicine Lodge Milling and Warehouse Company, or to his heirs or assigns, at a time when all the indebtedness of said milling company are liquidated, and H. W. Skinner had his personal business in such shape that said transfer back of said shares will not jeopardize said stock for any other liabilities outside of said milling company.

"That said H. W. Skinner is to be president of said milling company same as before and the business of the said milling company, so far as the public is concerned, is to be run as in the past. "H. W. SKINNER,

"J. F. SKINNER."

The defendant in his answer pleaded want of consideration and that the contract was void for want of mutuality. In addition to

exhibit B, the petition set out another contract between the same parties, designated as exhibit A, as follows:

"'Exhibit A.'

"agreement.

"This agreement, made and entered into on this 28th day of February, 1924, by and between H. W. Skinner of the first part and J. F. Skinner, party of the second part;

"Witnesseth: That for and in consideration of the sum of one dollar ($1), the receipt of which is hereby acknowledged, paid by the party of the second part to the party of the first part, and for the further consideration of the party of the second part refinancing the indebtedness in the sum of thirty-four thousand nine hundred dollars ($34,900) and interest held by the Commerce Trust Company, of Kansas City, Missouri, against the Medicine Lodge Milling, Warehouse and Supply Company, and the release of the said H. W. Skinner and J. N. Tincher of personal liability on said indebtedness, *which*, which said party of the first part hereby sells and assigns to the said party of the second part all of his right, title and interest, including stock held by him in the Medicine Lodge Warehouse and Supply Company, a corporation.

. "That in the receipt of said stock and the interest of the said H. W. Skinner, in said company by the said J. F. Skinner, the said J. F. Skinner is to receive all notes, accounts and all property of every kind and nature belonging to the said The Medicine Lodge Milling, Warehouse and Supply Company, as shown on the books of said company of this date. That the said J. F. Skinner is to have, own and control the same, and have exclusive control of said corporation as per the stock held by the said J. F. Skinner. That the said J. F. Skinner shall transfer on the books of the company into the name of the said J. F. Skinner all of the shares of stock delivered to him belonging to the said first party, except that certain shares, the number to be in the discretion of the said J. F. Skinner, to remain in the name of H. W. Skinner for the purpose of permitting the said H. W. Skinner to act as president.

"H. W. Skinner,
*Party of the First Part.*
"J. F. Skinner,
*Party of the Second Part.*"

The trial court found in favor of the plaintiff for specific performance. Defendant appeals.

Nothing has been done as to an accounting. Considerable evidence was introduced to show the business relation of these brothers and the facts and circumstances leading up to and surrounding the making of these two contracts, exhibits A and B. There were no special findings of fact made by the court, but there is no substantial disagreement about the general relations and transactions until about the time of the making of these contracts.

H. W. Skinner had owned and operated an elevator and coal and

lumber yards in Medicine Lodge for many years. Later he employed his brother, J. F. Skinner, to work for him, and still later he was in active charge of these enterprises for the owner. In 1917 H. W. Skinner organized a milling corporation with $50,000 capital stock—500 shares of $100 each—J. K. Richardson and J. N. Tincher each owning one-fourth of the stock and he owning one-half of it. The corporation built a flour mill in Medicine Lodge. Later J. F. Skinner acquired the interest held by Richardson, it being in dispute as to who paid for it. This corporation became involved, and in order to effect a loan the plaintiff turned over to the corporation his elevator and his coal and lumber yards as assets. The loan at the time of the making of these contracts amounted to $34,900, on which foreclosure suit was later commenced in federal court. The plaintiff was also indebted to the St. Joseph Cattle Loan Company for more than $1,000,000, and to satisfy the cattle loan company he had the other two stockholders with him assign all the milling company stock to it indirectly through a local cattle company belonging to plaintiff. The cattle loan company declined to advance the necessary funds to protect the milling stock from the foreclosure sale of the milling company property, but turned the stock back to plaintiff, and he had the assignment of it all made to his brother, J. F. Skinner, because he himself was still financially embarrassed. This was the purpose and occasion of the making of exhibit A, together with the proposition and plan of J. F. Skinner to raise $10,000 himself to apply on the mortgage foreclosure indebtedness of $34,900 and get time to pay the balance by earning it from the profits of the mill, elevator and coal and lumber yards. Considerable evidence and some correspondence shows there was hope in this way of saving the equity in this property, valued in the evidence at $100,000, and at the same time release all three stockholders from personal liability as indorsers of the notes. They all continued to sign the renewal notes until the indebtedness was paid. The evidence further shows that H. W. Skinner liquidated his indebtedness prior to his making demand for the return of the 380 shares of stock mentioned in exhibit B.

As to an interpretation and legal construction of exhibit B, taken alone as quoted above, the argument of the appellant is convincing. It does not name any consideration, and there seems to be nothing whatever in it which the appellant could enforce. It lacks mutuality of obligation, and, standing alone, is *nudum pactum.* The ap-

pellant, however, alleges a consideration which he says failed of fulfillment, and considerable evidence pro and con seems to have been introduced on the subject. He alleges that there was an oral agreement between him and his brother that his brother should pay a debt owing the milling company by him and a copartner of his in the sum of $16,000, and that "in consideration of the fulfillment of said oral promise the defendant caused a statement to be prepared and signed only by the defendant and not by plaintiff, wherein defendant promised to deliver to the plaintiff three hundred and eighty shares of the capital stock," etc. The evidence on this point is very conflicting. Plaintiff in his reply and testimony says there never was any such oral agreement. It is immaterial whether there was or not, because it could not supply the want of a consideration when the plaintiff says there was no such agreement and the defendant says it was not fulfilled.

It will be observed that exhibit B is not dated. Plaintiff says it was handed to him by the defendant a day or two after February 28, 1924, when exhibit A was executed. Defendant says he prepared it "sometime in March and about the middle of March, 1924."

One thing in exhibit B forcibly compels the reader to conclude that the writer had in mind some prior incident in connection with the same subject matter when he twice refers to *transferring back* the shares, which conclusively connects it up with the fact of their having been transferred to the writer. Another unmistakable intention of connection with exhibit A is the reference in both instruments to the plan of having H. W. Skinner continue to act as president of the company.

The theory of the appellee is that these two separate instruments should be construed together as referring to the same transaction, and that exhibit A furnishes a full and complete consideration for the promises of the defendant in exhibit B. Appellant maintains that exhibit A, being complete in itself, cannot be coupled up with another instrument which makes no specific reference to it with the purpose and effect of undoing or overturning the matters fixed in the former; that it takes a new consideration to support a supplemental contract or one which seeks to modify, amend, or change the terms of the former, and also stresses the fact that exhibit B was executed some days later than exhibit A. We have carefully considered all these objections to construing the two together as one contract and are satisfied that such construction is not only in fairness to the

parties litigant but fully in accord with the authorities on this subject. If the separate instruments are shown to be a part of the same transaction, as the two in this case undoubtedly are, then they should be construed together.

"Where several instruments are made as part of one transaction, they will be read together, and each will be construed with reference to the other. This is true, although the instruments do not in terms refer to each other. So if two or more agreements are executed at different times as parts of the same transaction they will be taken and construed together." (13 C. J. 528.)

"When different instruments are executed at the same time, but are all parts of one transaction, it is the duty of the court to suppose such a priority in the execution of them as shall best effect the intention of the parties. Moreover, the general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance. . . . When two written contracts are entered into between the same parties concerning the same subject matter, whether made simultaneously or on different days, they may, under some circumstances, be regarded as one contract, and interpreted together." (6 R. C. L. 850-851.)

The benefit accruing to one of the parties in one instrument may be the consideration for the promise of such party in another instrument.

"The situation of the parties and the circumstances under which written instruments are executed and delivered may be shown by parol in aid of interpretation. The deed, the agreement, and the will are to be considered as integral parts of a single transaction, so far as disposition of the land is concerned." (*Roseman v. Nienaber,* 100 Kan. 174, 176, 166 Pac. 491.)

"When a will, lease and deed are made about the same time, and appear to be parts of one transaction, the court may consider all of them, and the circumstances under which they were executed, in interpreting the deed and in determining the purpose that it was intended to accomplish." (*Jack v. Hooker,* 71 Kan. 652, syl. ¶ 4, 81 Pac. 203. See, also, *Insurance Co. v. Hanks,* 83 Kan. 96, 110 Pac. 99; *White v. White,* 103 Kan. 816, 176 Pac. 644.)

There can be no question, either from the contents of the two exhibits or from the evidence, that these two instruments were executed near the same time, by the same parties, relate to the same subject matter, and effect but one transaction, and in such case the execution of one of the contracts can be the consideration for the other.

"Where two or more written instruments are executed at the same time, between the same parties, relating to the same subject matter, and embodying

but one transaction, and the execution of one is expressed to be the consideration for the other, a court, in construing one of them, should read them all together as though all the parts were contained in one writing." (*Kurt v. Lanyon,* 72 Kan. 60, syl. ¶ 1, 82 Pac. 459.)

Exhibit B is really a complementary or reciprocal part of the single transaction between these two parties. Exhibit A did not mention the obligation or duties of the defendant, whereas exhibit B did, and the two together make a full and complete contract, without the second part of which it would be a very unreasonable business transaction.

"In an action to quiet title to the gas and oil rights in a half section of land, the record examined and held to justify a judgment that a deed of general warranty conveying the premises to the grantee, and the instrument executed by the grantee reconveying to the vendor all the oil and gas rights in the premises, were properly construed as complementary and reciprocal parts of a single transaction having their inception in a written contract for the sale of the property but reserving the oil and gas rights therein to the vendor." (*MacLorinan v. Finley,* 124 Kan. 637, syl. ¶ 1, 261 Pac. 587. See, also, *Lampe v. Lumber Co.,* 97 Kan. 376, 155 Pac. 918; *Rhoades v. Railway Co.,* 49 W. Va. 494.)

We conclude that, construing these two instruments together, there is a sufficient consideration for exhibit B to make the obligations therein imposed on the defendant enforceable. The appellee is entitled to specific performance.

The judgment is affirmed.