C. DYSON, *Appellant,* v. B. F. BUX *et al., Appellees.*

No. 17,008.

SYLLABUS BY THE COURT.

1. DAMAGES—*Wrongful Possession of Part of a Wall under Contract of Sale—Contract Not Superseded by a Deed.* D. owned lot 61, upon which, up to the north line, was the wall of a building. The petition alleged that he contracted orally to sell one-half of this wall to Bauerlein, but before the latter took it D. sold the lot to Bux and Stadel, telling them that it carried but one-half the north wall, as he had agreed to sell the other half to Bauerlein; that D. made a written contract to sell lot 61 to Bux and Stadel, to include one-half of the wall; that subsequently he executed a deed to them conveying lot 61, "and the improvements thereon, which consist of one-half (½) each of the north and south walls of building designated as street number two hundred and twenty-five (225)." The petition further alleged that Bauerlein and Bux and

Stadel conspired and colluded together for the purpose of cheating and defrauding D. out of the one-half of the wall, Bauerlein refusing to carry out his agreement to purchase from D., and with the consent of Bux and Stadel appropriating the half of the wall to his own use. *Held*, that a cause of action was stated, and that a demurrer to the petition was erroneously sustained.

2. DEEDS—*Exceptions—Construction—Intention.* The ancient rule that the habendum clause in a deed controls a later exception therein has lost much of its former force and inflexibility. A deed, like any other contract, should be construed by considering all its language, with a view to ascertaining the intention of the grantor.

Appeal from Shawnee district court. Opinion filed April 8, 1911. Reversed.

*W. R. Hazen,* for the appellant.

*Edwin D. McKeever, Z. T. Hazen,* and *R. H. Gaw,* for the appellees.

The opinion of the court was delivered by

WEST, J.: Dyson sued Bux, Stadel and Bauerlein, and alleged that he contracted orally with Bauerlein to sell him one-half of the north wall on lot 61, which wall was upon and up to the north line of the lot; that Bauerlein desired to purchase the one-half in order to make the wall a party wall, he owning the lot adjoining on the north; that before the oral contract was carried out the plaintiff started negotiations with Bux and Stadel for the exchange of lot 61 for certain mill property, and that during such negotiations he informed them that if the exchange was made it would have to be by reserving and retaining the north half of the north wall, as he had made a contract to sell it to Bauerlein; that it was then agreed that the exchange should be made, the north half of the wall in question to remain the property of the plaintiff; that a written contract was made for the sale of lot 61, "which includes said lot and one-half of the north and south

walls of the building occupying said lot"; that afterward a deed was executed to Bux and Stadel describing the property conveyed as "lot sixty-one (61) on Kansas avenue and improvements thereon, which consist of one-half each of the north and south walls of said building"; that afterward Bauerlein, who owned the adjoining lot on the north, conspired and colluded with Bux and Stadel to cheat and defraud the plaintiff out of the north half of the wall, and proceeded to erect a building, using such half of the wall as a party wall; that no attention was paid to a notice from the plaintiff of his rights in the wall and forbidding the defendants to use the same. A demurrer to the petition was sustained, apparently on the theory that the deed conveyed the lot and did not reserve any portion of the wall, and that the previous negotiations and contract were superseded by the deed.

The plaintiff complains of this ruling, and insists that the language of the deed was at least ambiguous and was susceptible of proof as to its meaning, and that it was not accepted as a performance of the conditions of the preceding contract and hence was not an absorption thereof. The defendants contend that the contract was merged in the deed, and that *Hampe v. Higgins,* 74 Kan. 296, is controlling. It is said in their brief that Bux and Stadel bought lot 61 and had a right to believe that they were purchasing everything upon it, and numerous authorities are cited in support of the proposition that reservations and exceptions in a deed must be in clear and definite language.

While there is a rule that an exception must not be repugnant to the grant, still a deed, like any other contract, must as a general thing be construed by considering the intention of the grantor, as manifested by the language used. We are unable to believe that the description in the deed—"lot number sixty-one . . . and the improvements thereon, which consist of one-half (½) each of the north and south walls of building

designated as street number two hundred and twenty-five (225)"—can leave serious doubt of the grantor's intention to reserve one-half of the wall in question. The language used was not well chosen, but it is sufficient to evince the intention, and, when taken in connection with the clearer language of the preceding contract, it is plain enough. Lot 61 and the improvements thereon can hardly be the same as lot 61 and the improvements thereon, "which consist of one-half each of the north and south walls" of the building. The petition shows that the purchasers knew, both by verbal information received from the seller and by the written contract which they had accepted, that the seller had no intention to convey more than one-half of the north wall, and the words employed in the deed themselves operated as a further notification of the grantor's intention.

In the case of *Hampe v. Higgins*, 74 Kan. 296, the court construed a deed as superseding a previous contract for the express reason that "the evidence furnished by the face of the two instruments and also the extrinsic circumstances shown indicate that the parties intended the deed as a complete settlement of all further controversy concerning the sale and conveyance of the land." (p. 298.) There the contract called for ninety acres of land, more or less, but the deed contained the significant provision that if a survey showed more than ninety acres the grantee would pay $82.23 an acre for the excess, and if it showed less the grantor should pay back the value of the deficiency at the same rate. The extrinsic facts shown were, in part, that when a question arose as to the grantor's title a tender of the entire purchase price was made, a suit for specific performance was begun, lawyers were consulted who managed the negotiations which led up to the deed, and a full consideration was paid upon its delivery. But here, admitting the allegations of the petition to be true, it was held as a matter of law that the deed not

only absorbed the previous negotiations and contract, but, in effect, that its language foreclosed the plaintiff's right to contend further.

In *Read v. Loftus*, 82 Kan. 485, it was held that the question of merger depends upon an examination of the instruments and the situation, conduct and intention of the parties. In the opinion it was said that "the conduct of the parties was a proper matter to be considered as well as the language of the instruments" (p. 492), and we think the same rule applies here.

"A reservation is of some new thing issuing out of. what is granted; an exception is a withdrawal from the operation of the grant of some part of the thing itself. . . . The exception is good when the granting. part of the deed is in general terms, as in the grant of a messuage and houses, excepting the barn or dovehouse; or in the grant of a piece of land, excepting the trees or woods; or in the grant of a manor, excepting a close, *ex verbo generali aliquid excipitur*. If the exception be valid, the thing excepted remains with the grantor, with the like force and effect as if no grant had been made." (2 Dev. Deeds, 2d ed., § 979.)

"As in the case of all contracts, the intent of the parties to the deed, when it can be obtained from the instrument, will prevail, unless counteracted by some rule of law. . . . When the intention of the parties can be plainly ascertained, arbitrary rules are not to be resorted to. The rule is that the intention of the parties is to be ascertained by considering all the provisions of the deed, as well as the situation of the parties, and then to give effect to such intention, if practicable, when not contrary to law." (2 Dev. Deeds, 2d ed., § 836.)

"If the only reason urged for construing a particular clause in a deed is founded upon the technical words which have been used, the court may disregard them in determining the effect to be given to the conveyance, and such a construction should be adopted as on a general view of the instrument, and of the intention which the parties had in view, seems most likely to carry their intention into effect." (2 Dev. Deeds, 2d ed., § 836*a*.)

" 'There is no reason why a rule which will discover the meaning of language not technical, in a note or other instrument, may not be resorted to to ascertain the meaning of language not technical in a deed.' (Quoting from *Bradshaw, et al., v. Bradbury,* 64 Mo. 334, 337, per Judge Henry.)" (2 Dev. Deeds, 2d ed., § 837.)

While it is held that a grant of land in a deed once plainly made can not be diminished by a subsequent exception in the same instrument, still the rigor of this rule should not be sufficient to overturn the manifest intention of the grantor or to preclude the explanation of an ambiguity by proper evidence. The extreme harshness of the rule is stated in section 838*a* of the second edition of Devlin on Deeds, where the author quotes from Mr. Justice Emery in *Maker v. Lazell,* 83 Maine, 562, in which it was said: "We do not find that this rule has ever been disregarded, or even seriously questioned, by courts." (p. 565.) It is sometimes called the rule of last resort, and is in accord with the maxim that the first deed and the last will shall operate. But we prefer the view expressed by Mr. Justice Brown, in *Triplett v. Williams,* 149 N. C. 394:

"But this doctrine, which regarded the granting clause and the habendum and the tenendum as separate and independent portions of the same instrument, each with its especial function, is becoming obsolete in this country, and a more liberal and enlightened rule of construction obtains, which looks at the whole instrument without reference to formal divisions, in order to ascertain the intention of the parties, and does not permit antiquated technicalities to override the plainly expressed intention of the grantor, and does not regard as very material the part of the deed in which such intention is manifested." (p. 396.)

A will can not take effect until the death of the testator, and it accords with reason that the last will made by him should operate. While a grant of an en-

tire estate can not, of course, be impaired by a subsequent instrument by the grantor, still it does not follow that he may not, in the original instrument, confine the grant to such portion of the estate as he may desire to convey; and there is no sound reason why such limitation should be restricted to any one clause in the instrument, but there is abundant reason why the entire language used should be given consideration in determining what the grantor's intention was.

In *Kendall v. Parsons,* 81 Kan. 192, it was said:

"The tendency of modern decisions is to ignore technical rules of construction in deeds of conveyance, as in wills, and to discover the intent of the parties; if that can be determined, to give it effect. (*Palmer v. Blodgett,* 60 Kan. 712; *Vawter v. Newman,* 74 Kan. 290; *Nolan v. Otney,* 75 Kan. 311.)" (p. 193.)

In *Palmer v. Blodgett,* 60 Kan. 712, it was said, in speaking of this rule:

"Modern theories, however, put deeds of real estate, for purposes of construction of their terms, in the list with all other kinds of written contracts, and they endeavor to ascertain the intent of the parties executing them more from the language of the whole instrument than from the relative positions of the different parts or clauses." (p. 714.)

(To the same effect is *Vawter v. Newman,* 74 Kan. 290, as well as *Nolan v. Otney,* 75 Kan. 311.)

Numerous authorities from other states might be cited showing that they are in harmony with the modern and not with the ancient rigorous rule. The judgment sustaining the demurrer is reversed, and the cause remanded for further proceedings in accordance herewith.