No. 31,653

Mrs. Gwladys Montgomery Steele, *Appellee,* v. R. W. Nelson, *Appellant.*

(32 P. 2d 253.)

Opinion filed May 5, 1934.

*C. M. Williams, D. C. Martindell, W. D. P. Carey* and *Charles Hall,* all of Hutchinson, for the appellant.

*A. C. Malloy, Roy C. Davis, Warren H. White* and *Frank S. Hodge,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action for specific performance of a contract to purchase real estate. Judgment was for plaintiff. Defendant appeals.

Briefly the facts are as follows: The Brehm Realty Company is a firm of realtors in Hutchinson. Bob Brehm is a member of that firm. He learned that plaintiff wished to sell her home in Hutchinson, together with another house that stood adjacent to it. He talked to defendant about buying the property and showed it to him.

Brehm then had a talk with plaintiff, who said that she would take $8,000 for the real estate and certain furniture she wanted to sell. The result of this was that Brehm prepared a memorandum on a form used by this firm. This memorandum was attached to the petition of plaintiff and marked "Exhibit A." This agreement was as follows (except that the place for the consideration was left blank):

"Exhibit A."

"I do this 7th day of September, 1932, give unto the Brehm Realty Co., agents, the sole and exclusive right and option to sell my two properties situated and known as Nos. 423 and 429 First Avenue East, Hutchinson, Kansas, consisting of my home place with the brick house to the west and all outbuildings, together with all permanent improvements situated thereon in their present condition, including ornamental yard pieces and shrubs, all water, lights, gas, plumbing fixtures, linoleum and fireplace fixtures and attachments complete in their present condition, including all curtain rods and drapes in my home place at 429 East First, with rent on the brick house to go to the buyer from date sale is completed, and the possession of my home place on or before October 1, 1932, together with all furniture and fixtures now situated in my home place, except the following items:

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The said property is legally described as the east half of lot 123, all of lots 125, 127, 129, 131 First Avenue East, original townsite of Hutchinson, Kansas, and the purchase price, which shall include all real estate and personal property as above described, shall be $6,240—$1,000 cash to be paid to the Brehm Realty Company, agents, to bind the sale and the remaining part of the purchase money shall be paid upon delivery by me of an abstract of title and a general warranty deed showing said property to be clear of all encumbrance and having a good merchantable title including the taxes for the year 1931, said buyer to pay all taxes for the year 1932.

"If the Brehm Realty Company, agents, make a sale, papers shall be executed immediately and left with them until sale is completed which shall be not later than thirty days from this date unless some irregularities are found in said title, in which case sufficient time shall be granted me to correct same.

"Insurance on the property shall be transferred on a *pro rata* basis. I agree to keep the yard in good condition until possession of the premises is given.

"Signed this 7th day of September, 1932."

This memorandum was not at that time signed by Mrs. Steele. Some trading talk ensued between the parties, with the result that the space for the amount was filled in as $6,240. Defendant then signed a statement which was attached to the memorandum already set out here. That statement was as follows:

"I hereby accept all the conditions of the above option sale with the gross purchase price to be $6,240 dollars in cash according to the conditions of this contract."

The memorandum, with the signature of defendant on it, was then presented to plaintiff. She signed it just above the statement just set out. Defendant signed this contract about 2:30 in the afternoon on November 7, 1932. Plaintiff signed it about 6:30 in the evening the same day. At the same time when defendant signed the contract heretofore described defendant signed another agreement written on an envelope. It was as follows:

"9-7-'32.
"My offer to purchase the Steele property good for one week from this date.                                                                    R. W. NELSON."

About 7 o'clock the same evening Brehm advised defendant by telephone that plaintiff had signed. The next morning defendant called Brehm on the phone and advised him that he did not desire to go on with the deal. A little later defendant called Brehm and stated that he was anxious to go ahead. Brehm, about 10 o'clock that morning, delivered to defendant his signed copy of the contract and went ahead getting the abstract of title and other papers ready. About 12:30 of that day defendant again called Brehm and advised him that he would not carry out the contract. He adhered to that decision. This suit for specific performance followed. The petition alleged the situation about as it has been given here. The answer was that the instrument signed by him was not a contract which bound plaintiff to sell the property to defendant, but was only an option to the realtors. Various defenses of fraud and misrepresentation as to the condition of the property were also pleaded. With reference to these defenses the court, in announcing the decision, found—

"The allegations of fraud and misrepresentation in defendant's answer were not sustained by the evidence, such statements as were made did not amount to fraud and defendant not only had the opportunity, but availed himself of it, to make a thorough investigation and examination, and satisfy himself as to the truth or falsity of most of the statements that were made. As to the condition of the property, he relied upon his own judgment, and not upon any statements made."

This finding takes the question of fraud and misrepresentation out of the case.

The point earnestly urged by defendant is as to whether the writings heretofore set out in this opinion are a sufficient compliance with the statute of frauds to bind the defendant. The provisions of that statute in which we are interested are as follows:

"No action shall be brought whereby to charge a party upon . . . any contract for the sale of lands, tenements, hereditaments, or any interest in or concerning them; . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing." (R. S. 33-106.)

It has long been the rule that a contract to comply with the statute did not need to be in a special form. 27 C. J. 256 is as follows:

"The note or memorandum is not the contract, but only the written evidence of it required by statute. The statute may be satisfied by informal memoranda containing sufficient evidence of the terms of a concluded contract and properly executed, even though the parties intend subsequently to embody the same terms in a formal contract, and even though they refer in the memorandum to a formal agreement to be thereafter prepared and executed. This is the rule in the absence of an understanding by the parties that they are not to be bound by the memorandum, nor until the execution of a formal contract; but not where there is such an understanding.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"No particular form of language or instrument is necessary to constitute a memorandum or note in writing under the statute of frauds; any document or writing, formal or informal, written either for the purpose of furnishing evidence of the contract or for another purpose, which states all the essential elements of the contract with reasonable certainty, and which is signed by the party to be charged or his lawfully authorized agent, is a sufficient memorandum or note in writing to satisfy the requirements of the statute. A memorandum may be written as well with lead pencil as with pen and ink. It may be filled in on a printed form."

In *Schneider v. Anderson*, 75 Kan. 11, 88 Pac. 525, this court considered this question. The writing was as follows:

"Augusta, Kansas, —— 19——.
"Anderson to receive 2,100 of Schneider. Anderson to have ½ corn, Schneider other half in field. Anderson to leave everything on farm, and to give possession October 1/04.                    CHARLES O. ANDERSON,
                                        GEORGE SCHNEIDER."

The language, together with an undelivered deed executed by the grantor and placed in escrow, was held to be a sufficient writing to satisfy the statute. To the same effect is *Stievers v. Cherryvale*, 86 Kan. 270, 120 Pac. 361. See, also, *Arnett v. Westcott*, 107 Kan. 693, 193 Pac. 377. The opinion in the latter case cites *Barry v. Coombe*, 26 U. S. 640. In that opinion the court said:

"An examination of the cases on this subject will show that courts of equity are not particular with regard to the direct and immediate purpose for which the written evidence of a contract was created." (651.)

In *Charlton v. Columbia Real Estate Co.*, 67 N. J. Eq. 629, 69 L. R. A. 394, the court said:

"Nor does it signify to whom the memorandum is addressed; it may be to a third person, and yet be a good writing to satisfy the statute of frauds. Form is not important. . . . The reason for this is clear. The memorandum is only necessary to evidence the contract, not to constitute it." (p. 633.)

It will be remembered that at the time defendant signed the contract marked "Exhibit A" he also signed a separate agreement submitted to him by Brehm, the effect of which was to bind him to keep his offer to buy the Steele property open for a week. Separate writings, if they are executed contemporaneously and form a part of the same contract, will be construed together to ascertain the agreement of the parties. (See *Schneider v. Anderson*, supra; *Haston v. Citizens State Bank*, 132 Kan. 767, 297 Pac. 1061; *Skinner v. Skinner*, 126 Kan. 601, 270 Pac. 594; also, *Berg v. Scully*, 120 Kan. 637.) To the same effect is the rule stated in 13 C. J. 528.

The contention of defendant that he is not bound because plaintiff was not bound is not good, even though it should be held that plaintiff was not bound in this case. This is the rule laid down in *Wiley v. Hellen*, 83 Kan. 544, 112 Pac. 158. In that case this court said: .

"The judgment is erroneous. The contract was signed by the party to be charged, which satisfies the statute of frauds. (*Becker v. Mason*, 30 Kan. 697; *Guthrie v. Anderson*, 47 Kan. 383, 386; *Guthrie v. Anderson*, 49 Kan. 416, 419.) It was not essential that the contract should be capable of enforcement against both parties at the time it was concluded (*Zelleken v. Lynch*, 80 Kan. 746) and want of mutuality because both parties did not sign is not available as a defense to a suit for specific performance brought against the party who did sign. (*Guthrie v. Anderson*, 47 Kan. 383, 386; *Schneider v. Anderson*, 75 Kan. 11, 18.)" (p. 547.)

See, also, *Golden v. Claudel*, 85 Kan. 465, 118 Pac. 77; *Sealock v. Auto Company*, 110 Kan. 302, 203 Pac. 302, and *McKee v. McClain*, 112 Kan. 746, 212 Pac. 906.

Defendant argues that the contract sued on does not sufficiently identify the parties to the contract. As we have seen, the law does not require a contract to comform to any particular formality to make it binding. Neither does it require any particular form of description of the parties. There is no question here as to the meeting of the minds. The only contention is that the assent was not evidenced by a sufficient writing. There can be no doubt but that the defendant knew with whom he was dealing. The execution of

the separate agreement on the envelope where the property is spoken of as the Steele property is evidence of that. The property in question had been occupied by plaintiff and her ancestors for nearly fifty years. Defendant had spent a large part of his life in that vicinity, his father's home being in the same block and his business near by. In addition to this, before defendant finally decided that he would not go through with the contract a copy of it signed by himself and plaintiff had been delivered to him. There is no rule that the name of the parties to be bound shall appear at any particular place in the writing. The appearance of their names at the bottom is sufficient if by an examination of the entire contract it can be ascertained who the parties are and what the terms are. See 27 C. J. 275, note 36 (a). There it is said:

"Where an agreement to lease shows in the body thereof that one of the persons signing is the proposed lessor, the signature of another person, not as witness, but as a party to the contract, is a sufficient description of the proposed lessee to satisfy the statute of frauds, there being nothing in the law precluding the court from looking at the signatures to ascertain the name or description of the party and the character in which he signed. (*Stokell v. Niven*, 61 L. T. Rep. N. S. 18.)"

See, also, *LeMarinel v. Bach*, 114 Wash. 651, 196 Pac. 22.

Defendant argues that he cannot be bound because he did not make the down payment of $1,000 required under the terms of the contract. The record discloses that defendant himself asked to be excused from compliance with this requirement on account of having his money in bonds. Plaintiff waived this. It is the universal rule that one seeking to enforce a contract may waive a provision of the contract that is in his favor. Such waiver does not render the contract unenforceable.

Defendant contends that he had withdrawn his offer before it became binding. The findings of the trial court are against this contention.

Defendant argues that the contract had to be returned to him bearing the signature of plaintiff before it became binding upon him. The record shows that he was notified by phone as soon as plaintiff had signed and, furthermore, that the next morning while he was still in the notion of fulfilling the contract a copy of the contract was handed to him and he instructed Brehm to get the abstract and papers ready.

Defendant argues that the contract here is too vague and indefi-

nite to support a decree of specific performance. Absolute certainty is not required in a contract in order for it to support a decree of specific performance. The rule is found in 58 C. J. 930. There it is said:

"However, absolute certainty is not required; reasonable certainty is necessary and sufficient; where the main features of the contract are sufficiently definite and certain, uncertainty in a subsidiary part will not necessarily prevent specific performance; uncertainty in a portion of the contract which has been waived is not fatal." (p. 933.)

See, also, *Kann v. Company*, 81 N. H. 535; also, *Stevens v. Palmour*, (Tex. Civ. App.) 269 S. W. 1057; also, *Wilson v. Beaty*, (Tex. Civ. App.) 211 S. W. 524; also, *Onglis v. Fohey*, 136 Wis. 28.

On this contention of defendant the findings of the trial court are helpful. The court said:

"Here both parties have signed the contract, it can easily be determined which is the vendor and which the vendee. No one executed the contract for one of the parties, the situation usually found in those cases where the rule requiring identification of parties is found."

The court had no difficulty in ascertaining the terms of the contract, the parties to it and the subject matter of it.

We conclude, therefore, that the judgment of the trial court should be affirmed. It is so ordered.