No. 32,458

Lucy Cowman, Ida May Greer, Joe C. Cowman, Nellie Andrew, Maude L. Lamb and Louis Cowman, *Appellants*, v. Phillips Petroleum Company, *Appellee*.

(51 P. 2d 988)

Opinion filed December 7, 1935.

Robert H. Clogston, of Eureka, and D. W. Eaton, of Wichita, for the appellants.

W. H. Carpenter, of Marion, R. H. Hudson, H. K. Hudson, both of Bartlesville, Okla., and J. R. Snyder, of Kansas City, Mo., for the appellee; Edwin S. McAnany, Maurice L. Alden and Thomas M. Van Cleave, all of Kansas City, of counsel.

The opinion of the court was delivered by

WEDELL, J.: This was a suit for cancellation of an eighty-acre tract of an original oil and gas lease of 400 acres.

A demurrer was sustained to plaintiffs' evidence. Plaintiffs appeal from this ruling and also rely on reversible error growing out of alleged misconduct of the trial court. The pertinent facts are: On the first day of February, 1927, Louis Cowman and Lucy Cowman, his wife, executed and delivered to J. W. Harwood a lease for oil and gas purposes, covering a total of 400 acres, 240 acres of which are located in section 11, and 160 acres of which are located in section 12, all in the same township and range, in Marion county. Material portions of the lease contract are:

"It is agreed that this lease shall remain in force *for a term of five years from this date, and as long thereafter as the lessee produces oil and gas, or either of them, from said land or the premises are being developed or operated.*

"If no well be commenced on said land on or before the 1st day of February, 1928, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the First National Bank at Herington, Kan., or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of four hundred and no/100 dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well twelve months from said date. In like manner and upon like payment or tenders the commencement of a well may be further deferred for like period or the same number of months successively.

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, . . .

". . . and it is hereby agreed in the event this lease shall be assigned as

to a part or as to parts of the above-described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease insofar as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rentals."

The lease held by J. W. Harwood covered the northwest quarter of section 12, which section lies to the east of section 11, and the southeast quarter and the east half of the southwest quarter of section 11. By assignments, appellee, Phillips Petroleum Company, became the owner of the west half of the southeast quarter of section 11, on September 30, 1930. This is the eighty in controversy. Harwood remained the owner of the eighty to the west and the eighty to the east of the Phillips eighty. Appellants have been at all times and are now the owners of all land covered by the lease.

The first drilling on the original 400-acre tract was done in 1927. It was in the southwest quarter of the northwest quarter of section 12. This drilling resulted in a dry hole. The dry hole is a little over a quarter mile northeast from the east line of the eighty acres in controversy. Appellants' witness testified so far as he knew the quarter section in section 12 on which the dry hole had been drilled was released to the Cowmans. This left 240 acres of the basic lease. They were the three eighty-acre tracts above described. There has been no development on the eighty east of the eighty in question. There are four producing wells on the Harwood eighty to the west of the Phillips eighty. Appellants had received royalties in the sum of $5,701.23. The royalty to August 31, 1934, was $3,576.28, and $2,125 since September 1, 1934. This suit for cancellation was filed December 21, 1934. No wells had been drilled on the eighty acres in question at that time. On the Harwood eighty to the west of the Phillips eighty, the first well was drilled in December, 1930. It was a producing well and was drilled along the west line and in the northwest corner. In May, 1934, well number two was drilled one location south of well number one. The initial production from that well was 282 barrels per day. Following the drilling of that well and on August 1, 1934, Louis Cowman wrote defendant requesting a release of the eighty acres in question on the ground that the lease had expired. On September 10, 1934, Cowman's attorney wrote defendant requesting a release, stating his client contended the lease had expired and he desired to have it released, inasmuch as it encumbered the title to his land. Appellee

answered each of these letters on August 3 and September 13, respectively, acknowledging the letters requesting cancellation on the ground that the lease had expired, and stated that the lease on this eighty had not expired because it was held by production on other parts of the basic lease.

On August 22, 1934, Harwood completed well number three, one location south of well number two. This was also a producing well. On February 10, 1935, Harwood completed well number four, directly east of his well number two, and about one location from the west line of the Phillips eighty in question. On February 15, 1935, appellee attempted to drill a well on its eighty east of well number four on the Harwood eighty. Three days later and on February 18, 1935, appellants obtained a restraining order preventing appellee from proceeding with the drilling of this well. The trial court, on motion of appellee and after a hearing, dissolved the restraining order on the same day it was granted.

During the trial of the case on its merits in March, 1935, appellants' witness, Creek, testified that he was the production superintendent of the Harwood Oil Company, and that he was familiar with the Lost Springs, Marion county, oil area; that he had drilled various wells in that area beginning in 1926; that he had drilled for the appellee's company in 1928, and that to his knowledge appellee had not drilled any other well in that field since 1928. The evidence further showed that with few exceptions there was no drilling in this area between 1930 and 1934.

It will be observed requests for release were not made upon the ground rentals had not been paid nor upon the ground appellee had violated the implied covenant to develop. The letters contained no request in the alternative, that is, to develop or release. The letters constituted request for cancellation solely on the ground that the lease had expired.

Appellants now contend they are entitled to cancellation because the term of the lease had expired and there had been no development of the eighty in question. They say the term of the lease was five years. It was apparently upon this theory that they requested a release. Where an oil and gas lease is for a definite fixed period only, it does expire by its own terms at the end of the fixed period. (*Cement Co. v. Brick & Tile Co.*, 100 Kan. 547, 164 Pac. 1087.)

The lease in the instant case is not for a definite fixed period only. One of its provisions is that the lease shall terminate if lessee does

not commence a well on or before February 1, 1928. A well was completed on June 8, 1927. That meets this requirement. If no well was drilled by date fixed the lease provided for annual rental payments. Rentals were paid on the basic lease till production started.

The other provision as to duration of lease is:

"This lease shall remain in force for a term of five years from this date and as long thereafter as the lessee produces oil and gas or either of them from said land or the premises are being developed or operated."

Appellants do not admit that the entire lease may be considered as a unit, but they say that in order to reach the correct rule to be applied in this case it may be assumed that the lease on both the Phillips eighty and the Harwood eighty are held by the same party. They are adjoining eighties under the same basic lease. There has been substantial development and production on the basic lease. The first well was in the northwest quarter of section 12. It was a dry hole and the lease on that quarter was released. This left three eighties joining each other in the south half of section 11. A producing well was drilled on the west eighty in 1930. This was before the five-year term expired. Total production on the west eighty had resulted in royalties to appellants in the sum of $5,701.23. Appellants accepted royalties from the time of completion of the first well in 1930 to August 31, 1934, in the sum of $3,576.28. The requests to release were dated August 1, and September 10, 1934. No well had been drilled on the Phillips eighty. No request or demand had been made on appellee to develop. There is no indication that appellants, prior to requests to release, had construed the lease on the Phillips eighty as having expired. The five-year term alone expired February 1, 1932. Appellants then made no request for release of this eighty. If appellants thought that at the end of five years appellee had forfeited its right to drill by reason of failure to develop before the end of the five-year period, it was their duty to promptly assert the forfeiture. Forfeitures must be promptly asserted. If not asserted they are waived. (*Bloom v. Rugh,* 98 Kan. 589, 593, 160 Pac. 1135; *Brinkman v. Empire Gas and Fuel Co.,* 120 Kan. 602, 608, 245 Pac. 107.) The tendency has long been to frown on forfeitures where the rights of the parties insisting thereon can otherwise be adequately protected. (*Bloom v. Rugh,* supra. See cases therein cited.)

As heretofore stated no notice or request was ever made on appellee to drill on the Phillips eighty. This is a suit in equity. This court long ago held:

"Ordinarily, when unnecessary delay becomes apparent, the lessor ought to call upon the lessee, or party holding under him, to do the things required under the lease, and to wait a reasonable time for such party to act." (*Howerton v. Gas Co.*, 81 Kan. 553, 564, 106 Pac. 47.)

The principle that courts of equity may give opportunity for and require development before resort is had to the more drastic action of forfeiture has been frequently announced. (*Alford v. Dennis*, 102 Kan. 403, 170 Pac. 1005; *Brown v. Oil Co.*, 114 Kan. 166, 217 Pac. 286; *Webb v. Croft*, 120 Kan. 654, 244 Pac. 1033; *Howerton v. Gas Co.*, 82 Kan. 367, 108 Pac. 813.)

In the case of *Alford v. Dennis* this court considered a lease on two tracts of land, 716 acres and 220 acres, respectively. The lease was executed in 1902 *for a term of ten years, and as much longer as gas or oil might be found in paying quantities.* The tracts were about two miles apart. The larger tract was developed and many wells were drilled thereon, but in nearly fourteen years nothing was done towards drilling or developing the smaller tract. No demand was made on the lessee to drill on plaintiff's tract prior to the commencement of the action. Under those circumstances this court said:

"*Held,* that the ordinary rule that equity will not relieve against an improvident bargain prevents an absolute forfeiture, that equity will not forfeit a contract for the mere breach of one of its implied covenants; but *held,* also, that the petition stated a cause of action for some redress, either in damages, if such be ascertainable, or in the alternative that the lessees be required to drill and develop plaintiff's land within a reasonable time pursuant to their implied covenant, under penalty of forfeiture, following the doctrine announced in the fourth paragraph of the syllabus of *Howerton v. Gas Co.,* 82 Kan. 367, 108 Pac. 813." (Syl. ¶ 3.)

Where there has been production on a part of the basic lease within the fixed term, lessor is not necessarily entitled to a release at the end of the fixed term as to some other portion of the basic lease which has not been developed. In Mills-Willingham, Law of Oil and Gas, page 118, the rule is stated thus:

"The finding or producing of oil or gas, during the fixed term, in accordance with the provisions of the lease, is a condition precedent to the right to hold or produce from the land after the expiration of the fixed term. Such finding or producing of oil or gas during the fixed term, however, extends the

lease after the expiration of the fixed term as long as that condition shall continue. And, on the principle of the indivisibility of the lease contract, where the lease covers several tracts of land, although they may have passed into the ownership of different parties since the execution of the lease, a producing well drilled upon any of the tracts, during the term, will extend the fixed term as to the other tracts. And this is true although the lease upon the different tracts has come to be owned by different parties and there is no privity of interest between the lessee, who drilled the producing well, and the owners of the lease upon the other tracts. But, of course, under such circumstances the different tracts could not be held indefinitely by production upon one tract without violating the implied covenant for development." (See cases cited in footnote.)

In *Summers on Oil & Gas*, page 296, the author makes the following statement of the rule:

"Ordinarily, to extend a lease beyond the fixed term by production, the oil or gas must be produced from the demised land. Where, however, a number of landowners demise their lands in a single lease, the courts hold that the lessee may extend the lease for all of the various tracts beyond the exploratory period by satisfactory production from one tract; or where the lease is of a single tract, but a part of it later assigned by the lessee, production within the exploratory period on the assigned portion will extend the lease as to the unassigned lands." (See cases cited in the footnote.)

Appellants insist they had an absolute right to cancellation at the end of the term February 1, 1932. This contention entirely ignores the remaining term provision of the lease, to wit: "And as long thereafter as the lease produces oil and gas, or either of them, from said land or the premises are being developed or operated." There was development of the basic lease, and it was being operated. Furthermore, this is an equitable action. Appellant's contention ignores the fact they had received substantial royalties and continued to accept them for several years after the fixed five-year period had expired and that they made no request or demand on appellee to develop. They waited until drilling activity again began and then insisted upon cancellation. Appellants' contention ignores the fact that appellee had attempted to drill and was prevented from doing so by appellants.

Appellants further contend courts of equity make a distinction between cases where the fixed term of years has expired and where it has not. It is true, this is one of the important factors to be considered. It is, however, not the only factor nor necessarily the controlling factor in each particular case. Equity will give whatever relief the facts warrant. (*Hardy v. LaDow,* 72 Kan. 174, 83 Pac. 401.)

Much stress is laid on the case of *Nigh v. Haas,* 139 Kan. 307, 31 P. 2d 28. Analysis of that case discloses the term of the lease was for five years and as much longer as oil or gas should be produced in paying quantities. Nothing had been done toward developing the portion of the lease there in question for almost ten years. Lessors made demands for development. The demands were refused. Those are not the facts here. In the Nigh case this court called attention to another important distinction in cancellation cases which is pertinent here. In the Nigh case the court said:

"The distinction between the cases cited and this one is that in those cases the lessees were seeking to defeat cancellation *and asking an opportunity to drill.* Here the lessees have had the opportunity to drill for fifteen years and have not seen fit to do so." (p. 311.)

In the instant case no demand had been made to develop and appellee is asking an opportunity to drill.

It is further contended appellee's answer to appellants' request for release made demand for development futile. Such conclusion does not necessarily follow. Appellants' contention as reflected by the letters for release was clearly that the lease had terminated and clouded appellants' title. With this legal conclusion appellee did not agree. Let us assume, without deciding, that appellee was wrong. Still it does not follow that if appellants had demanded appellee develop the lease or release it, that appellee would not have developed.

Appellants now contend appellee is required to develop under the implied covenants of the lease. When appellee attempted to develop it was restrained by court order obtained by appellants. It is urged that appellee commenced drilling after suit was filed for cancellation. The petition was the first specific complaint about appellee's failure to develop. If we assume appellant's suit was a complaint of failure to develop as well as a request for cancellation, a court of equity could still give appellee an opportunity to develop before it decreed cancellation. Appellee attempted to drill an offset well on its lease to well number four on the Harwood lease within a few days after the well on the Harwood lease had been completed. It was restrained from drilling the well by appellants. The record of what transpired at that hearing is not before us. The trial court dissolved the restraining order after application for dissolution and hearing. We must therefore assume the trial court believed appellee was in good faith in its request to be permitted to test and develop

the premises. In the light of all the circumstances in this case we find no error in the judgment denying cancellation. Should such development not progress properly appellants will not be without adequate and prompt relief.

It is urged the trial court abused its discretion and erred in refusing counsel for appellants to be heard upon the question of demand which they say was injected into the case by the trial court after the evidence was introduced and after the cause had been argued upon other issues, and was not a ground of the demurrer to the evidence.

Appellee demurred on the ground the evidence did not establish a cause of action for cancellation. This challenged every element of the evidence.

We have carefully examined the record relative to the charge that the court refused to hear counsel on the subject of demand. Counsel is always entitled to a fair opportunity to be heard. This was the second hearing in this case. We do not have before us the record, including contentions of the parties during the first hearing. Under the circumstances this court would not be justified in remanding the case for retrial.

The judgment is affirmed.