No. 42,349

ETHEL L. SHEPARD, Executrix of the Estate of M. L. Shepard, Deceased, and ETHEL L. SHEPARD, *Appellees*, v. THE JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, a Corporation, *Appellant*.

(368 P. 2d 19)

126

Opinion filed January 20, 1962.

*Clayton S. Flood,* of Hays, and *W. F. Schell,* of Wichita, argued the cause, and *George B. Collins, Oliver H. Hughes, Robert Martin, K. W. Pringle, Jr., Thomas M. Burns* and *Laverne Morin,* all of Wichita, were with them on the briefs for appellant.

*D. A. Hindman,* of Stockton, argued the cause, and *Stanley Krysl,* of Stockton, was with him on the briefs for appellees.

The opinion of the court was delivered by

Fatzer, J.: This action was commenced on May 26, 1958, by M. L. Shepard and Ethel L. Shepard, his wife, to quiet title to certain real estate in Rooks County, Kansas, described as the Southeast Quarter (SE ¼) of Section 14; East half (E ½) of Section 23, and the Southwest Quarter (SW ¼) of Section 24, all in Township Ten (10) South, Range Eighteen (18) West. After the death of M. L. Shepard, the action was revived in the name of Ethel L. Shepard, executrix of the estate of M. L. Shepard, deceased, and Ethel L. Shepard, as plaintiffs. The case was submitted to the district court upon the pleadings, and a written statement of facts which was agreed to. The court's judgment was in part in favor of the plaintiffs and in part in favor of the defendant, as hereafter set forth, and the defendant has appealed.

The pertinent facts are summarized: On March 13, 1940, the defendant, John Hancock Mutual Life Insurance Company, a corporation, owned the real estate involved and on that date it entered into a written contract with M. L. Shepard for the sale of the property. The contract recited, among other things, that the sale was subject to three outstanding oil and gas leases covering all the land dated July 1, 1936, in favor of one A. M. Jennings, each for a primary term of ten years from July 1, 1936, with payment to the lessor of ⅛th royalty of oil and gas produced, and an exception and reservation in favor of the defendant, the exact provisions of which were contained in the deed conveying the property to the plaintiffs.

On July 21, 1942, and pursuant to the contract of sale, the defendant executed and delivered its special warranty deed to plaintiffs conveying the real estate in fee simple subject to the Jennings leases, and also subject to an exception and reservation, hereafter referred to as reservation, in the granting clause, which reads:

". . . excepting and reserving with right of ingress and egress, an undivided ¼ of the landowners ⅛ royalty, or, ⅟₃₂ of the interest in and to all oil, gas or other minerals (of every character and kind) in or under the said land for a period of fifteen (15) years from April 1, 1940 and as long thereafter as oil, gas or any other mineral, is produced from said land, or operations for any such mineral are being conducted thereon by grantees or grantor (their Successors or assigns). The said royalty reservation shall not be participating in bonuses or rentals, but shall be participating in other rights, royalties and other benefits accruing under any existing or future oil, gas or mineral lease while the said royalty reservation is in full force and effect."

The deed was acknowledged by the defendant and recorded in Rooks County on April 28, 1943.

On March 29, 1943, plaintiffs executed and delivered to defendant their mortgage in the principal sum of $4,700 covering the real estate conveyed by the special warranty deed, which was recorded in Rooks County on April 28, 1943, the same date the special warranty deed was recorded. The mortgage contained the following recital:

"Subject to the undivided one-fourth nonparticipating mineral interest heretofore reserved to the John Hancock Mutual Life Insurance Company in the deed from the John Hancock Mutual Life Insurance Company to M. L. Shepard and Ethel M. (sic) Shepard dated July 21st, 1942, for a term of 15 years from April 1, 1940, and so long thereafter as any minerals, including oil and gas are produced."

Plaintiffs later executed four other mortgages which did not refer to any reservation, but those mortgages were executed to mortgagees other than the defendant.

The Jennings leases expired or were dropped without oil or gas being produced, and were released of record on a date not disclosed by the record.

The real estate involved is 640 contiguous acres lying in an "L" shape, being a mile and a half north and south and a mile east and west. On April 29, 1949, plaintiffs leased the northern most quarter section of the long part of the "L," the Southeast Quarter of Section 14, to Ajax Oil Company, Inc. for oil and gas development, which lease was duly recorded in Rooks County. The instrument was a standard form commercial lease designated as Form 88 (Producers) B 1-43, and provided for the payment of the usual ⅛th royalty in the event of production. The lease was for a primary term of two years and as long thereafter as oil and gas, or either of them, were produced from the land.

In the early part of 1951 oil was produced under the Ajax lease

from a ten-acre location in the extreme northeast corner of the Southeast Quarter of Section 14, and production of oil has been continuous to the present date. No additional production has been obtained under that lease. All oil produced has been delivered to a pipe line and sold to the National Cooperative Refinery Association pursuant to division orders executed by the plaintiffs and defendant on November 5, 1951. The division orders provided that the interest of defendant under the reservation was ¼th of ⅛th royalty interest and the interest of each of the plaintiffs was ⅜ths of ⅛th royalty interest. Payments for oil purchased have been made and accepted by plaintiffs and defendant on the basis of those fractional interests.

At the expiration of the primary term of the reservation—April 1, 1955—the other three quarter sections here involved—the East Half of Section 23 and the Southwest Quarter of Section 24—were not leased for oil, gas or other minerals and remained unleased until September 9, 1957. On that date the plaintiffs executed separate oil and gas leases on each of the three quarter sections to the Davis Brothers. No oil or gas has been produced under the Davis Brothers' leases. Subsequently, and on March 25, 1958, the plaintiffs and the defendant executed an agreement in writing ratifying oil and gas leases covering all of the land involved, which recognized the defendant as owning an interest in the ⅛th royalty in all of the real estate. The instrument was duly recorded in Rooks County on May 21, 1958.

In a memorandum opinion the district court found that the reservation in question created a royalty interest of ¼th of the landowners' ⅛th royalty, which was valid and in force and effect as to the Southeast Quarter of Section 14 since production was obtained under the Ajax lease during the primary term of such interest. Accordingly, judgment was rendered that the defendant was the owner of a royalty interest consisting of ⅟₃₂nd of the total amount of oil produced from that quarter section so long as oil is continuously produced therefrom. With respect to the other three quarter sections, it found that since the reservation was one of a royalty interest only, such interest vested under the Jennings leases when the conveyance was made on July 21, 1942, and when those leases expired or were dropped there was no vesting; that since the three quarters were not leased for oil and gas on April 1, 1955, the end of the fifteen-year period, and remained unleased for some eighteen

months thereafter, the reservation violated the rule against perpetuities as being too remote as to vesting and was therefore void. In other words, the district court concluded that, insofar as the rule against perpetuities is concerned, a term royalty interest stems from and finds its life in an oil and gas lease which must be in existence when the interest is created, or one executed during the primary term of such interest, and has no valid existence otherwise. Conclusions hereafter announced make it unnecessary that we pass upon that question. In harmony with its findings, the district court rendered judgment quieting plaintiffs' title to the East Half of Section 23 and the Southwest Quarter of Section 24 and to the production of oil, gas or other minerals therefrom as against the defendant and all persons claiming through or under it.

The first and paramount question is: What was the nature of the interest reserved? The answer turns largely upon the construction to be given the reservation. The fundamental rule in construing the effect of written instruments is that the intent and purpose of the parties be determined from an examination of the entire instrument, or as is sometimes stated, from its four corners, that is, all the language used anywhere in the instrument should be taken into consideration and construed in harmony with other provisions. (*Dyson v. Bux,* 84 Kan. 596, 114 Pac. 1092; *Skelly Oil Co. v. Cities Service Oil Co.,* 160 Kan. 226, 160 P. 2d 246; *Epperson v. Bennett,* 161 Kan. 298, 167 P. 2d 606; *Kennedy v. Monroe,* 165 Kan. 168, 193 P. 2d 220; *Brungardt v. Smith,* 178 Kan. 629, 290 P. 2d 1039; *Magnusson v. Colorado Oil & Gas Corp.,* 183 Kan. 568, 331 P. 2d 577.)

The defendant contends the deed reserved an undivided ⅛th interest in the minerals in place and constituted an estate in real property which was vested in it when the deed was delivered, and that production of oil on the Southeast Quarter of Section 14 perpetuated and extended the mineral interest in all the property for as long as production continued therefrom, notwithstanding production was not obtained elsewhere on the acreage, and relies upon *Baker v. Hugoton Production Co.,* 182 Kan. 210, 320 P. 2d 772.

Plaintiffs contended in the district court and strenuously argue here that the reservation created a true royalty interest of ⅛th of the landowners' ⅛th royalty, or ⅟₆₂nd of the total production of oil, and that such interest must be construed as vesting in oil and gas leases in existence or coming into existence during the primary term of the reservation, otherwise it is void as being too remote as

to vesting. They advance various arguments with respect to the intention of the parties and urge that rules of construction of written instruments favorable to them should be applied. They assert that to construe the reservation as reserving an interest in minerals in place would lead to illogical results. They point out that every mineral interest when covered with an oil and gas lease is reduced eight times, since $\frac{7}{8}$ths of the production is given the lessee to produce the oil and gas; that if the mineral interest reserved or conveyed is $\frac{1}{4}$th, the owner is entitled to $\frac{1}{32}$nd of production when severed at the wellhead, or if the interest is $\frac{1}{2}$ of the minerals in place, he would receive $\frac{1}{16}$th of the oil and gas, but that where the owner reserves $\frac{1}{32}$nd of the mineral interest, as here, he would not be entitled to $\frac{1}{4}$th of $\frac{1}{8}$th of the oil produced, but only $\frac{1}{32}$nd of $\frac{1}{8}$th, or $\frac{1}{256}$th of the total production, hence, they conclude such a result would not only be inconsistent with the defendant's contention, but is one clearly not intended by the scrivener who went to great length to show that all the defendant desired was to share only in the production of oil and gas.

The necessity of applying rules of construction depends upon whether the terms of the reservation are clear and unambiguous, and if no ambiguity is apparent there is no need for the application of any rule to aid in their interpretation. Where the terms of a written instrument are involved, the supreme court has the same duty as did the district court to examine the instrument and determine whether it is free from ambiguity. (*Morgan v. Wheeler*, 150 Kan. 667, 95 P. 2d 320; *Brungardt v. Smith*, supra, and cases cited; *Gardner v. Spurlock*, 184 Kan. 765, 769, 339 P. 2d 65.)

It is assumed that the distinction between a royalty interest and a mineral interest has now been made clear by the many decisions of this court. It is unnecessary to restate a full definition of the terms, and the reader is directed to *Bellport v. Harrison*, 123 Kan. 310, 255 Pac. 52; *Burden v. Gypsy Oil Co.*, 141 Kan. 147, 40 P. 2d 463; *Lathrop v. Eyestone*, 170 Kan. 419, 227 P. 2d 136; *Hickey v. Dirks*, 156 Kan. 326, 330, 133 P. 2d 107; *Rathbun v. Williams*, 154 Kan. 601, 604, 121 P. 2d 243, and *Magnusson v. Colorado Oil & Gas Corp.*, supra, p. 571. For purposes here concerned, it may be said that the term "royalty" has reference to a right to share in production of oil and gas at severance; it is personal property, and does not include a perpetual interest in the oil, gas and other minerals in and under the land. The term "mineral interest" means an interest in

and to oil and gas in and under the land and constitutes present ownership of an interest in real property.

Apparently that distinction was not clear when the instant reservation was prepared, or for that matter, when many other mineral conveyances and royalty assignments were drawn. The failure of persons engaged in the petroleum industry or those dealing in oil and gas holdings to recognize the distinction has prompted this court to find the true nature of the instrument in the contents and not in the name given it. In *Lathrop v. Eyestone,* supra, it was said:

"As we have frequently stated the term 'royalty' is often rather loosely and inaccurately used by men in the petroleum industry, those dealing in oil and gas holdings and at times by attorneys. Some persons refer to oil and gas in place as royalty. Others refer to royalty as the landowner's share in production. We have, therefore, repeatedly held the true nature and character of the instrument is not to be determined by the name or label attached thereto but by its intent as reflected by the terms, the contents thereof." (l. c. 423.)

See, also, *Serena v. Rubin,* 146 Kan. 603, 72 P. 2d 995, and *Froelich v. United Royalty Co.,* 178 Kan. 503, 290 P. 2d 93, opinion denying rehearing 179 Kan. 652, 297 P. 2d 1106.

For purposes of analyzing the reservation, we divide it into its two parts—its two sentences. The first part contains two related clauses while the second part has only one, and the terms "royalty" and "royalty reservation," respectively, are used in each. The use of those terms, together with the fractional discrepancy in describing the interest reserved, appear consistent with and lend support to plaintiff's claim that the instrument created a royalty interest, that is, ¼th of ⅛th royalty is the same as ¹⁄₃₂nd of the production. But the consistency is only apparent. It vanishes in the face of the fact that the reservation does not make reference to a ¹⁄₃₂nd share of production as urged by the plaintiffs. The first clause of the first part of the reservation recites that the defendant excepts and reserves "an undivided ¼ of the landowners ⅛ royalty." Standing alone, that would appear to reserve a true royalty interest, but the clause is prefaced by the words "with right of ingress and egress." That language is significant. (*Gas Co. v. Oil Co.,* 83 Kan. 136, 141, 109 Pac. 1002.) It gave the defendant the right to use the surface of plaintiffs' land so far as might be necessary for it to avail itself of the use and benefit of the interest reserved. An assignment or reservation of a royalty interest does not carry the right to explore for and remove the minerals in place, and the right of ingress and

egress would not be necessary if all that was reserved was merely a right to share in production from the land as distinguished from the right to develop the same for the production of the minerals reserved.

The second clause of the first part commences with the function word "or" to describe with greater exactness of phrasing and meaning the first clause, and states "1/32 of the interest in and to all oil, gas or other minerals (of every character and kind) in and under the said land for a period of fifteen (15) years from April 1, 1940 and as long thereafter as oil, gas or any other mineral, is produced from said land. . . ." The language, "in and to all oil, gas and other minerals (of every character and kind) in and under the said land" is diametrically opposed to the definition of royalty, and to deny its apparent meaning as an estate in land and interpret it to mean "a share of production" only, as the plaintiffs suggest, would be irregular and clearly unwarranted. The language is very similar to deeds of conveyance previously reviewed by this court and held to convey present title to minerals in place (*Magnusson v. Colorado Oil & Gas Corp.*, supra, p. 574), and it is persuasive evidence that minerals in place were reserved. Likewise, the remaining portion of the second clause, "or operations for any such mineral are being conducted thereon by grantees or grantor (their Successors or assigns)," tends to confirm that conclusion. Unless that language is meaningless, it constitutes further evidence that the defendant reserved minerals in place with the right of either party or their successors or assigns, upon the expiration of the Jennings leases, to conduct operations for the production of the minerals, jointly or individually, and if conducted by the defendant individually, the "right of ingress and egress" reserved in the first clause afforded it a means to enter upon the property for that purpose. As previously noted, a royalty interest does not carry the right to explore for and remove the minerals in place, and the right to conduct operations upon the land would be a useless right if all that was reserved was only royalty or a share of the proceeds of the production from the land.

The second part of the reservation may be construed in complete harmony with the first part. That part makes it clear the defendant was not to participate in bonuses or delayed rentals accruing under any lease while the "royalty reservation" was in full force and effect but "shall participate in other rights," royalties and other benefits

accruing under any lease for the same period. The fact that the reservation expressly stipulated the defendant was not to participate in such payments lends support to the defendant's contention that minerals in place were intended to be reserved.

It is well settled that the owner of minerals in place has an equal right to lease the property for the exploration of oil and gas and their development as does the owner of the surface who is also the owner of minerals in place, and to share proportionately in bonuses and delayed rentals which may be provided for in the lease. (*Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. 84, 91, 69 P. 2d 4, 303 U. S. 623, 58 S. Ct. 742, 82 L. Ed. 1086; *Brooks v. Mull*, 147 Kan. 740, 744, 745, 78 P. 2d 879, *Davis v. Hurst*, 150 Kan. 130, 132, 90 P. 2d 1100, 122 A. L. R. 957; *Hickey v. Dirks*, supra.) The converse is true of the owner of a royalty interest. Such an interest does not carry the right to lease the property for oil and gas development or to join in the execution of such leases (*Skelly Oil Co. v. Cities Service Oil Co.*, supra), or to participate in bonuses or delayed rentals (*Hickey v. Dirks*, supra; *Bellport v. Harrison*, supra). Hence, had the parties intended the defendant reserve only a royalty interest there would have been no necessity to make the reservation non-participating as to bonuses and delayed rentals since the plaintiffs would have been entitled to them as owners of the surface and of all the minerals in place in fee. On the other hand, had the parties intended the defendant reserve a fractional interest in minerals in place, the defendant's right to participate in such payments would naturally follow and to entitle the plaintiffs to receive them, it would have been necessary to expressly exclude them from the reservation. Likewise, the language that the defendant "shall participate in other rights" accruing under any lease is further evidence that minerals in place were reserved.

It is commonly understood in the petroleum industry and among the lawyers of the state that the word "participate" as used in a mineral conveyance or reservation usually contemplates at least three things. A grant of minerals in place entitles the owner to participate in bonuses, delayed rentals, and leasing rights, or any combination of those three rights. While the defendant waived two of the three rights in favor of the plaintiffs, it expressly reserved the right to "participate in other rights." We are of the opinion that within the "other rights" reserved was the right to execute oil and gas leases, and had the plaintiffs executed such leases not signed by

the defendant after the deed was recorded, they would have been, as stated by Chief Justice Dawson in *Brooks v. Mull,* supra, p. 744, "not worth a picayune" until the defendant ratified them.

The clarity of the intent of the parties that the defendant reserved an interest in minerals in place is enhanced by the recital in the mortgage executed by the plaintiffs on March 29, 1943. It is well settled that where two or more instruments are executed by the same parties contemporaneously or at different times in the course of the same transaction, and concern the same subject matter, they will be read and construed together so far as determining the respective interests of the parties, although they do not in terms refer to each other. (*MacLorinan v. Finley,* 124 Kan. 637, 640, 261 Pac. 587; *Skinner v. Skinner,* 126 Kan. 601, 270 Pac. 594; *Steele v. Nelson,* 139 Kan. 559, 32 P. 2d 253; *Setchell v. Reed,* 153 Kan. 818, 820, 113 P. 2d 1050; 17 C. J. S. Contracts, § 298, p. 714.) While the special warranty deed was executed and delivered to plaintiffs on July 1, 1942, it was not recorded until April 28, 1943, the date the mortgage was recorded, and under the foregoing rule, the recital in the mortgage which defined the interest reserved by the defendant as an "undivided one-fourth nonparticipating mineral interest," may be considered for its evidentiary value in determining the intention of the parties.

The fractional discrepancy does not assume the proportions nor have the effect the plaintiffs urge. It is not uncommon for parties to mineral deeds or reservations, where a royalty or mineral interest is conveyed or reserved subject to an existing oil and gas lease, to confuse the fractional interest conveyed or reserved. Such confusion occurred in the instant deed. The reservation states "an undivided ¼ of the landowners ⅛ royalty, or, ¹⁄₃₂ of the interest in and to oil, gas or other minerals . . . in and under the said land." This court has previously considered fractional discrepancies created by such confusion. (*Lathrop v. Eyestone,* supra; *Froelich v. United Royalty Co.,* supra; *Magnusson v. Colorado Oil & Gas Corp.,* supra.) In the Magnusson case it was pointed out that it was not only persons in the petroleum industry who make this type of inadvertent mistake, but on occasion the mistake has been made by courts, and it was said:

"As the most common leasing arrangement provides for a one-eighth royalty reserved to the lessor, the confusion of fractional interests stems primarily from the mistaken premise that all the lessor-landowner owns is a one-eighth royalty.

In conveying minerals subject to an existing lease and also assigning a corresponding fractional interest in the royalties received, mistake is often made in the fraction of the minerals conveyed by multiplying the intended fraction by one-eighth. Thus, if a conveyance of an undivided one-half of the minerals is intended, the parties will multiply one-half by one-eighth and the instrument will erroneously specify a conveyance of one-sixteenth of the minerals upon the assumption that one-sixteenth is one-half of what the grantor owns. An ambiguity is created because the instrument will also show that the conveyance of one-sixteenth of the minerals is meant to entitle the grantor to one-half of the royalty. Of course, an undivided one-half of the minerals is needed to carry one-half of any royalties reserved." (l. c. 576.)

And so here. In computing the fractional interest reserved the parties were aware of the existence of the Jennings leases providing for ⅛th royalty to the landowner, and it is obvious the scrivener multiplied ¼th by ⅛th and the instrument erroneously specified a reservation of ⅟₃₂nd as the interest reserved, apparently upon the assumption that ⅟₃₂nd interest in and to all oil, gas or other minerals, would constitute ownership of ¼th of the landowners' ⅛th royalty, when the intention of the reservation as disclosed by its other terms indicate that the fraction ¼th should have been used instead of the fraction ⅟₃₂nd. When this is done, the intent of the grantor is clear and no ambiguity exists. Hence, contrary to plaintiffs' contention, no occasion exists for the application of any rule of construction to aid in the interpretation of the reservation.

The terms of the reservation disclose a consistent intent that the instrument reserve an undivided ¼th interest in and to the minerals in and under the land. While the words "royalty" and "royalty reservation" were used in the instrument, there is no reason to ignore the clear meaning of some sixty other words out of deference to those two, and when construed with all the other language of the reservation it is apparent they were not used in their ordinary and accepted meaning, but were loosely and inaccurately used as intending to mean an interest in real property. If doubt may be entertained as to the intent of the parties, it is dispelled by the recital in the mortgage defining the interest reserved as an "undivided one-fourth nonparticipating mineral interest" in all the land conveyed, and compels the conclusion that the defendant reserved an estate in real property which was vested in it upon delivery of the deed. To hold otherwise would result in the destruction rather than the construction of the property interest intended to be reserved.

The district court erred in not finding that the defendant reserved an undivided ¼th nonparticipating interest in the minerals in place for a period of fifteen years from April 1, 1940, and as long thereafter as oil, gas or other minerals are produced from "said land." The only production from the entire acreage was obtained under the Ajax lease on the Southeast Quarter of Section 14, which has continued to the present time. In *Baker v. Hugoton Production Co.,* supra, it was said:

"The instrument grants a base or determinable fee in the oil, gas and other minerals in place in the 3,630 acres described therein. The grant is for a term of twenty years and as long thereafter as oil, gas, or either of them, are being produced from *said land.* The words 'said land' refer to the 3,630 acres described in the granting clause. Production on any part of that acreage was production from *said land,* the legal effect of which was that the mineral interest was perpetuated and extended as to the *entire* acreage. (*Cowman v. Phillips Petroleum Co.,* 142 Kan. 762, 51 P. 2d 988, and *Wilson v. Holm,* supra, at page 237.)" (l. c. 212.)

Since the interest reserved was an interest in minerals in place in all the land conveyed, we are of the opinion that production from the Southeast Quarter of Section 14 perpetuated and extended the interest in minerals in place to the entire acreage.

The judgment is reversed with directions to enter judgment in favor of the defendant that it is the owner of an undivided ¼th nonparticipating interest in the minerals in place in all the land conveyed in the special warranty deed for a period of fifteen years from April 1, 1940, and as long thereafter as oil, gas or any other minerals are produced from "said land."

It is so ordered.